CASE NO. 22-13778-J

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

JAMES HOWELL, JR.,

*Plaintiff-Appellant*,

v.

THE MOREHOUSE SCHOOL OF MEDICINE, INC.,

*Defendant-Appellee*.

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
HONORABLE MARK H. COHEN
CASE NO.: 1:20-cv-03389-MHC

---

**APPELLANT JAMES HOWELL, JR.'S OPENING BRIEF**

---

**DREW MOSLEY
Georgia Bar No. 526406
DREW MOSLEY, LLC
279 W. Crogan St.
Lawrenceville, Georgia 30046
(678) 225-0098 | drew@mlawmail.com**

**Counsel for Appellant**

Appeal No. 22-13778-J
*James Howell, Jr. v. The Morehouse School of Medicine, Inc.*

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to FED. R. APP. P. 26.1 and 11TH CIR. R. 26.1, the undersigned counsel of record verifies that those persons or entities listed below have or may have an interest in the outcome of this case:

Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C. - Counsel for Appellee at District Court and on Appeal

Cohen, Hon. Mark H. - Judge, United States District Court

Davis-Primer, Nakimuli - Counsel for Appellee at District Court and on Appeal

Drew Mosley, LLC - Counsel for Appellant at District Court and on Appeal

Howell, Jr., James Gregory - Appellant/Plaintiff below

Mosley, Drew - Counsel for Appellant at District Court and on Appeal

Pinkins, Tanisha - Former Counsel for Appellee at District Court

Stuart, Jonathan - Counsel for Appellee at District Court and on Appeal

The Morehouse School of Medicine, Inc. - Appellee/Defendant below

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiff-Appellant James Howell, Jr. requests oral argument and submits that oral argument will assist the Court's disposition of this case in focusing on the issues and testing the basis and validity of the contentions of the Parties. Plaintiff-Appellant James Howell, Jr. reserves the right to argue on his own behalf at any oral argument.

# TABLE OF CONTENTS

Certificate of Interested Persons And Corporate Disclosure Statement ................C-1

Statement Regarding Oral Argument ...................................................... i

Table of Contents .......................................................................... ii

Table of Citations ........................................................................ iv

Jurisdictional Statement ................................................................ xii

Statement of the Issues ("Issues") ......................................................1

Statement of the Case ....................................................................4

    I.    Course of Proceedings and Disposition Below ................................6

    II.    Statement of Facts ........................................................9

    III.    Standard of Review .......................................................20

    IV.    Summary of Argument ...................................................21

    ARGUMENT .......................................................................23

    A.    Disability Discrimination .....................................................25

      1.  Failure-to-Accommodate ................................................25

      a. Continuing Violation and Hostile Learning Environment .................26

      b. Deliberate Indifference (Issue #1) .....................................27

      c. Available Relief (Issue #2) ............................................31

      d. Mootness (Issue #3) ..................................................38

2.  Disparate Treatment (Issue #4)....................................................39

B.  Intentional Infliction of Emotional Distress (Issue #5) ...........................46

1.  MSM's Conduct was Extreme and Outrageous....................................46

2.  MSM Acted Intentionally or Recklessly ...............................................50

3.  MSM Caused Howell's Emotional Distress ..........................................51

4.  Howell's Emotional Distress was Severe ...............................................51

C.  Fraud and Negligent Misrepresentation [Counts VII-IX] (Issues #6-7) .52

1.  Thompson's Representations [Counts VII-IX]....................................52

2.  Scienter [Counts VII-IX] .......................................................................53

3.  Thompson's Representations Made to Deceive [Counts VII-VIII] ......56

4.  Howell's Reasonable Reliance [Counts VII-IX] ..................................57

5.  Howell's Proximate Damages [Counts VII-IX] ....................................59

D.  Third Motion to Amend [Doc. 62] (Issue #8).........................................60

Conclusion ........................................................................................................63

Certificate of Compliance ........................................................................................64

Certificate of Service ........................................................................................65

# TABLE OF CITATIONS

**Cases**

*Abdul-Malik v. AirTran Airways, Inc.*, 678 S.E.2d 555 (Ga. App. 2009) ..............51

*Abram v. Fulton County Govt.*, 598 Fed. Appx. 672 (11th Cir. 2015)(unpublished) ...........................................................................26

*Abrams & Wofsy v. Renaissance Inv. Corp.*, 820 F. Supp. 1519 (N.D. Ga. 1993)....................................................................................53

*Al Najjar v. Ashcroft*, 273 F.3d 1330 (11th Cir. 2001)...........................................39

*Alejandro v. Palm Beach State Coll.*, 843 F. Supp. 2d 1263 (S.D. Fla. 2011)........36

*Anderson v. Chatham*, 379 S.E.2d 793 (Ga. App. 1989).........................................46

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)...................................................................24

*Ashman v. Marshall's of MA, Inc.*, 535 S.E.2d 265 (Ga. App. 2000) ....................47

*Bailey v. Wheeler*, 843 F.3d 473 (11th Cir. 2016)...................................................23

*Barnes v. Gorman*, 536 U.S. 181 (2002) .................................................................36

*Bell A. Corp. v. Twombly*, 550 U.S. 544 (2007) ......................................................24

*Bennett v. Spear*, 520 U.S. 154 (1997) ...................................................................34

*Brackin v. Intl. Paper*, CV-10-03444-CLS, 2012 WL 4815525 (N.D. Ala. Oct. 10, 2012) ................................................................. 44, 45

*Capriulo v. Bankers Life Co.*, 344 S.E.2d 430 (Ga. App. 1986) ............................49

*Carrigan v. C. Adjustment Bureau, Inc.*, 502 F. Supp. 468 (N.D. Ga. 1980) .........50

*Cash v. Smith*, 231 F.3d 1301 (11th Cir. 2000) ................................................ 25, 40

*Chapter 7 Tr. v. Gate Gourmet, Inc.*, 683 F.3d 1249 (11th Cir. 2012) ..................43

*Constr. Aggregate Transport, Inc. v. Fla. Rock Industries, Inc.*, 710 F.2d 752

    (11th Cir. 1983) ...................................................................................34

*Crawford v. Carroll,* 529 F.3d 961 (11th Cir.2008) ...............................................45

*Davis Next Friend LaShonda D. v. Monroe County Bd. of Educ.*, 526 U.S.

    629 (1999) ...........................................................................................27

*Dept. of Com. v. New York*, 139 S.Ct. 2551 (June 27, 2019) ..................................34

*Douglas v. Bigley*, 628 S.E.2d 199 (Ga. App. 2006) ...............................................59

*Ethredge v. Hail*, 996 F.2d 1173 (11th Cir. 1993).....................................................38

*Forbes v. St. Thomas U., Inc.*, 768 F. Supp. 2d 1222 (S.D. Fla. 2010) ..................40

*Franklin v. Hill*, 417 S.E.2d 721 (Ga. App. 1992) ..................................................49

*Gallien v. Binkley*, CV408-037, 2008 WL 4916394 (S.D. Ga. Nov. 14, 2008)......61

*Georgia-Carolina Brick & Tile Co. v. Brown*, 266 S.E.2d 531 (Ga. App. 1980)

    ............................................................................................................ 56, 57

*Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316 (11th Cir. 2012).........43

*Hardaway Co. v. Parsons, Brinckerhoff, Quade & Douglas, Inc.*, 479 S.E.2d

    727 (Ga. 1997) ....................................................................................52

*Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323 (11th Cir. 2013).......... 31, 33

*Howerton v. Harbin Clinic, LLC*, 776 S.E.2d 288 (Ga. App. 2015) ............... 46, 51

*Ins. Co. of N.A. v. Lexow*, 937 F.2d 569 (11th Cir. 1991), *certified question answered,* 602 So. 2d 528 (Fla. 1992) .................................................................21

*J.A.M. v. Nova S.E. U., Inc.*, 0:15-CV-60248-KMM, 2015 WL 4751149 (S.D. Fla. Aug. 12, 2015), *aff'd,* 646 Fed. Appx. 921 (11th Cir. 2016)(unpublished) .................................................................... 25, 41, 43, 44, 45

*Jarrard v. United Parcel Serv., Inc.*, 529 S.E.2d 144 (Ga. App. 2000) ..... 47, 49, 50

*Kuritzky v. Emory U.*, 669 S.E.2d 179 (Ga. App. 2008).........................................47

*Liese v. Indian River Cty. Hosp. Dist.*, 701 F.3d 334 (11th Cir. 2012) ............ 27, 29

*Lightning v. Roadway Exp., Inc.*, 60 F.3d 1551 (11th Cir. 1995).................... 46, 48

*Lucas v. W.W. Grainger, Inc.,* 257 F.3d 1249 (11th Cir. 2001) .............................25

*Magluta v. Samples,* 256 F.3d 1282 (11th Cir. 2001).............................................24

*Miraliakbari v. Pennicooke*, 561 S.E.2d 483 (Ga. App. 2002) ...............................48

*Morrissey v. ASD Shared Services, LLC*, 1:12-CV-4345-CAP-AJB, 2013 WL 11330647 (N.D. Ga. Sept. 3, 2013) ....................................................................62

*Nadler v. Harvey*, 06-12692, 2007 WL 2404705 (11th Cir. Aug. 24, 2007) ..........25

*Natl. R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) .................................27

*Pierson v. News Group Publications, Inc.*, 549 F. Supp. 635 (S.D. Ga. 1982).......50

*Powell v. Thomas*, 643 F.3d 1300 (11th Cir. 2011)................................................20

*Redding v. Nova Se. Univ., Inc.*, 165 F. Supp. 3d 1274 (S.D. Fla. 2016)26, 35, 36, 37, 38, 40, 44, 45

*S. Grouts & Mortars, Inc. v. 3M Co.*, 575 F.3d 1235 (11th Cir. 2009)..................62

*Segev v. Lynn U., Inc.*, 19-CV-81252, 2021 WL 2269838 (S.D. Fla. Feb. 26, 2021), *report and recommendation adopted,* 19-81252-CIV, 2021 WL 1996437 (S.D. Fla. May 19, 2021) ............................................................... 34, 35

*Sheely v. MRI Radiology Network, P.A.*, 505 F.3d 1173 (11th Cir. 2007)..............20

*Shepherd v. ISS Intern. Serv. System, Inc.*, 873 F. Supp. 1550 (N.D. Ga. 1994)......................................................................................................49

*Silberman v. Miami Dade Transit*, 927 F.3d 1123 (11th Cir. 2019) ............... 27, 29

*Silverberg v. Paine, Webber, Jackson & Curtis, Inc.*, 710 F.2d 678 (11th Cir. 1983)......................................................................................................24

*Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417 (11th Cir. 1998)........................ 20, 62, 63

*Stephen A. Wheat Tr. v. Sparks*, 754 S.E.2d 640 (Ga. App. 2014).................... 51, 59

*Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278 (11th Cir. 1997)......................................................................................................26

*SunAmerica Corp. v. Sun Life Assur. Co. of Canada*, 77 F.3d 1325 (11th Cir. 1996)......................................................................................................38

*Thaeter v. Palm Beach Cty. Sheriff's Off.*, 449 F.3d 1342 (11th Cir. 2006)..... 20, 24

*Trichell v. Midland Credit Mgt., Inc.*, 964 F.3d 990 (11th Cir. 2020) ....................36

*Virciglio v. Work Train Staffing LLC*, 674 Fed. Appx. 879 (11th Cir. 2016)(unpublished) ................................................................................61

*Wilf v. Bd. of Regents of the Univ. Sys. of Ga.*, No. 1:09-CV-1877-RLV, 2010
   WL 11469573 (N.D. Ga. July 6, 2010)......................................................... 31, 32

*Wilf v. Bd. of Regents of the Univ. System of Georgia*, 1:09-CV-1877-RLV,
   2009 WL 10658152 (N.D. Ga. Sept. 29, 2009) ........................................... 32, 35

*Williams v. Dresser Industries, Inc.*, 120 F.3d 1163 (11th Cir. 1997) ...................52

*Wooden v. Bd. of Regents of U. System of Georgia*, 247 F.3d 1262 (11th Cir.
   2001)........................................................................................................................33

*Worthy v. City of Phenix City, Alabama*, 930 F.3d 1206 (11th Cir. 2019)..............24

**Statutes**

20 U.S.C. § 1681 ....................................................................................................60

28 U.S.C. § 1291 .................................................................................................. xiii

28 U.S.C. § 1331 ................................................................................................... xii

28 U.S.C. § 1343 ................................................................................................... xii

28 U.S.C. § 1367 ................................................................................................... xii

28 U.S.C. § 1391 ................................................................................................... xii

29 U.S.C. § 794, *et seq*......................................xii, 1, 2, 6, 21, 22, 26, 27, 36, 38, 40

42 U.S.C. § 12101, *et seq*...................................xi, xii, 1, 2, 6, 21, 22, 26, 36, 38, 40

42 U.S.C. § 2000d ..................................................................................................60

O.C.G.A. § 23-2-58................................................................................................49

O.C.G.A. § 51-6-1..................................................................................................59

O.C.G.A. § 51-6-2 ......................................................................... 52, 57

O.C.G.A. § 51-6-4 .............................................................................57

**Rules**
11TH CIR. R. 26.1 ..........................................................................C-1

FED. R. APP. P. 26.1 .......................................................................C-1

FED. R. APP. P. 4 ............................................................................ xiii

FED. R. CIV. P. 10 ...........................................................................20

FED. R. CIV. P. 15 ...........................................................................63

**Regulations**
28 C.F.R. § 36.101, *et seq.*............................................................ xii

34 C.F.R. § 104.1, *et seq.*........................................................ xi, xii

**Acronyms Defined**
2017-18 ...........................................................................................4

2018-19 ...........................................................................................4

2019-20 ...........................................................................................4

AC ................................................................................................ xii

ADA ............................................................................................. xii

AHP ..............................................................................................4

DC ................................................................................................ xii

HLE .............................................................................................. xii

IAHNTA .......................................................................................4

IARP ..................................................................................................9

IIED ................................................................................................. xii

LOA-P .............................................................................................15

MD ...................................................................................................4

MSM .................................................................................................1

NHP .................................................................................................4

NTA .................................................................................................4

ODS .................................................................................................4

OSLER ...........................................................................................10

RA .................................................................................................. xii

## People Defined

Anachebe .......................................................................................13

Bell ................................................................................................15

Committee ....................................................................................16

Elks ...............................................................................................19

Henderson ....................................................................................14

Howell .......................................................................................... xii

Knight ...........................................................................................10

Rice ...............................................................................................18

Thompson .......................................................................................9

Appeal No. 22-13778-J
*James Howell, Jr. v. The Morehouse School of Medicine, Inc.*

| Removable Glossary of Acronyms and People Defined in Subsequent Sections | |
|---|---|
| 2017-18 | 2017-18 Academic Year |
| 2018-19 | 2018-19 Academic Year |
| 2019-20 | 2019-20 Academic Year |
| AC | Amended Complaint |
| ADA | Americans with Disabilities Act of 1990, *as amended*, 42 U.S.C. § 12101, *et seq.* (including the Americans with Disabilities Act Amendments Act of 2008), and its implementing regulations, 28 C.F.R. § 36.101, *et seq.* |
| AHP | Abnormal Human Physiology |
| Anachebe | Dr. Ngozi Anachebe, Associate Dean of Admissions and Student Affairs |
| Bell | Alecia Bell, Interim Chief Compliance Officer |
| Committee | Student Academic Progress and Promotions (SAPP) Committee |
| DC | United States District Court for Northern District of Georgia |
| Elks | Dr. Martha Elks, Senior Associate Dean of Educational Affairs |
| Henderson | Keith Henderson, Chief Compliance Officer |
| HLE | Hostile Learning Environment |
| Howell | Plaintiff-Appellant James Howell, Jr. |
| IAHNTA | Ineffective Administration of Howell's NTA |
| IARP | Interactive Accommodation Review Process |
| IIED | Intentional Infliction of Emotional Distress |
| Knight | Dr. Brandi Knight, Director of OSLER |
| LOA-P | Leave of Absence Policy |
| MD | Doctor of Medicine |
| MSM | Defendant-Appellee Morehouse School of Medicine, Inc. |
| NHP | Normal Human Physiology |
| NTA | Note-Taking Accommodation |
| ODS | Office of Disability Services |
| OSLER | Office of Student Learning and Educational Resources |
| RA | Section 504 of the Rehabilitation Act of 1973, *as amended*, 29 U.S.C. § 794, *et seq.*, and its implementing regulations, 34 C.F.R. § 104.1, *et seq.* |
| Rice | Dr. Valerie Montgomery Rice, President and Dean |
| Thompson | Marla Thompson, ODS Manager and Title IX Coordinator |

## **JURISDICTIONAL STATEMENT**

The United States District Court for the Northern District of Georgia **("DC")**, pursuant to 28 U.S.C. § 1331 [federal question] and 28 U.S.C. § 1343 [civil rights], had original jurisdiction over the claims set forth in Counts I-VI and XII of Plaintiff-Appellant James Howell, Jr.'s **("Howell")** Amended Complaint **("AC")** for disability discrimination, retaliation, and hostile learning environment **("HLE")**, which arise under Section 504 of the Rehabilitation Act of 1973, *as amended*, 29 U.S.C. § 794, *et seq*. **("RA")**, and its implementing regulations, 34 C.F.R. § 104.1, *et seq*., and the Americans with Disabilities Act of 1990, *as amended*, 42 U.S.C. § 12101, *et seq*. **("ADA")** (including the Americans with Disabilities Act Amendments Act of 2008), specifically Title III 42 U.S.C. §§ 12181-12189 unless otherwise noted, and its implementing regulations, 28 C.F.R. § 36.101, *et seq*.

DC, pursuant to 28 U.S.C. § 1367 [supplemental jurisdiction] and 28 U.S.C. § 1391 [venue], had supplemental jurisdiction over the state law claims set forth in Counts VII-XI and XIII-XV of Howell's AC for willful misrepresentation; fraudulent or reckless misrepresentation; negligent misrepresentation; breach of contract; punitive damages; unjust enrichment; breach of fiduciary duty; and intentional infliction of emotional distress **("IIED")**.

This Court has jurisdiction of this matter under 28 U.S.C. § 1291 because this is an appeal of a final decision of DC wherein all of Howell's claims have been disposed.

DC's final decision was filed on October 11, 2022, and Howell's timely notice of appeal was filed on November 9, 2022, within the thirty days allotted under FED. R. APP. P. 4(a)(1)(A).

## **STATEMENT OF THE ISSUES**

I.  Under RA/ADA, for a failure-to-accommodate claim to entitle plaintiff to damages, intentional discrimination must be shown. Intentional discrimination requires showing deliberate indifference by defendant's official who possesses substantial supervisory authority and complete discretion at key decision point in the administrative process dealing with plaintiff. In light most favorable to Howell, has he sufficiently pled factual allegations, on the assumption that all AC's allegations are true, that The Morehouse School of Medicine, Inc. **("MSM")** was deliberately indifferent?

II.  Article III standing requires three elements: (1) injury-in-fact; (2) causal connection between injury-in-fact and challenged action of defendant; and (3) redressing by a favorable decision. A plaintiff seeking injunctive relief must show sufficient likelihood of future discrimination. In light most favorable to Howell, has he sufficiently pled factual allegations, on the assumption that all AC's allegations are true, to confer Article III standing and allow him to pursue injunctive relief of restarting his medical education with deletion of his prior academic record, under RA/ADA?

III.  A claim is moot in federal courts if meaningful relief can no longer be granted to plaintiff. DC first ruled Howell sufficiently pled failure-to-accommodate claims under RA/ADA but later dismissed these claims as

1

moot, ruling it was without meaningful relief to grant to Howell. In light most favorable to Howell, has he pled sufficient factual allegations, on the assumption that all AC's allegations are true, that (1) MSM was deliberately indifferent in order to award compensatory damages under RA/ADA, (2) Howell has Article III standing and is allowed to pursue injunctive relief of restarting his medical education with deletion of his prior academic record under RA/ADA, and (3) MSM's overturning Howell's dismissal does not deprive DC's ability to grant meaningful relief, so as to vacate DC's mootness ruling?

IV.    Under RA/ADA, to establish discrimination by disparate treatment, plaintiff must show (1) they were disabled, (2) otherwise qualified, and (3) subjected to unlawful discrimination because, or solely by reason of, their disability. In light most favorable to Howell, has he sufficiently pled factual allegations, on the assumption that all AC's allegations are true, to satisfy these elements?

V.    Under Georgia law, to sufficiently allege IIED claim, plaintiff must establish (1) defendant's conduct was extreme and outrageous; (2) defendant acted intentionally or recklessly; (3) defendant's conduct caused emotional distress; and (4) plaintiff's resulting emotional distress was severe. In light most favorable to Howell, has he sufficiently pled factual allegations, on the assumption that all AC's allegations are true, to satisfy these elements?

VI.    Under Georgia law, to sufficiently allege a claim for fraudulent misrepresentation requires five elements: (1) defendant made representation; (2) knowing representation was false or defendant's representation was reckless; (3) intentionally to deceive plaintiff; (4) plaintiff's reasonable reliance; and (5) plaintiff's incurring proximate damages. In light most favorable to Howell, has he sufficiently pled factual allegations, on the assumption that all AC's allegations are true, to satisfy these elements for his willful/reckless misrepresentation claims [Count-VII/Count-VIII]?

VII.    Under Georgia law, to sufficiently allege a claim for negligent misrepresentation requires three elements: (1) defendant's negligent supply of false information to plaintiff; (2) plaintiff's reasonable reliance upon that false information; and (3) plaintiff's incurring proximate damages. In light most favorable to Howell, has he sufficiently pled factual allegations, on the assumption that all AC's allegations are true, to satisfy these elements?

VIII.    A party seeking leave to amend after a scheduling order's amendment deadline must demonstrate good cause. Good cause is shown whereby the scheduling order cannot be met despite the diligence of party seeking leave to amend. Does Howell's third motion for leave to amend demonstrate good cause and diligence?

3

## STATEMENT OF THE CASE[1]

MSM accepted Howell, a disabled student, for its Doctor of Medicine **("MD")** program's prospective 2021 class. (Doc. 24 ¶ 45.) For all of Howell's medical education, his requested note-taking accommodation **("NTA")** was granted by MSM's Office of Disability Services **("ODS")**. (*Id.* ¶¶ 26, 37-42, 55, 74-75, 87, 142, 169.)

2017-18 academic year **("2017-18")** and 2018-19 academic year's **("2018-19")** courses were taught with heavy lecture emphasis, with students reliant on note-taking for obtaining all necessary information, and classes built upon previous classes. (*Id.* ¶¶ 91-92, 145.) MSM's ineffective administration of Howell's NTA **("IAHNTA")** persisted for nearly all 2017-18 and 2018-19, negatively affecting Howell's education and academic record. (*Id.* ¶¶ 78-81, 90-92, 109-12, 117, 119-21, 124-32, 138-41, 144-45, 157-59, 163-68, 172, 174, 203, 266.) During 2017-18/2018-19, Howell's submitted complaints were not handled according to MSM's policies. (*Id.* ¶¶ 94-97, 100, 102-08, 112, 118, 133-37, 146, 152-56.)

MSM instructed Howell one could not learn/understand abnormal human physiology **("AHP")**, 2019-20 academic year's **("2019-20")** courses, without first learning/understanding normal human physiology **("NHP")**, 2017-18/2018-19's

---

[1] **Any pinpoint citations of Electronic Case Filings ("ECF") herein will always reference page numbers imprinted on ECF header.**

courses. (*Id.* ¶¶ 172-73, 176.) Howell was unable to properly learn/understand 2019-20's AHP courses due to his inability to properly learn/understand 2017-18/2018-19's NHP courses because of MSM's 2017-18/2018-19 IAHNTA. (*Id.* ¶¶ 174-76.) Past half-way through 2019-20, Howell submitted complaints to MSM officials about his **current AHP course failings because of** MSM's 2017-18/2018-19 IAHNTA. (*Id.* ¶¶ 178-80; Docs. 1-20, 1-23 at 1; Docs. 1-21, 1-24 at 5-6.) A month later, Howell had met with both officials. Neither was concerned about Howell's failings. (Doc. 24 ¶¶ 181, 184-92; Docs. 1-25, 1-26 at 1-2; Doc. 1-29 at 3.) Howell missed March 2020's exams, after he was already failing, because of time needed conducting statistical analyses on his NTA for 2017-18/2018-19's 456 classes and researching his disability rights in preparation for filing his March 28, 2020 compliance complaint. (Doc. 24 ¶¶ 189, 200-01, 203, 267; Docs. 1-25, 1-26 at 1; Doc. 1-29 at 3; Doc. 1-28 at 1.)

Despite MSM's compliance report acknowledging MSM's 2017-18/2018-19 IAHNTA, MSM dismissed Howell. (Doc. 24 ¶¶ 238, 245, 249, 270-72.) MSM's cited reasons for its dismissal decision were consequences Howell suffered because of MSM's 2017-18/2018-19 IAHNTA. (*Id.* ¶¶ 74-75, 78-81, 90-91, 117-24, 138-41, 144-46, 157-60, 163, 172-76, 203, 262-72; Docs. 1-20, 1-23 at 1; Docs. 1-21, 1-24 at 1-7; Doc. 1-44 ¶¶ 22, 31-56; Doc. 1-44 at 10-27.) On appeal, MSM overturned Howell's dismissal, citing MSM's 2017-18/2018-19 IAHNTA. (Doc. 24 ¶¶ 313-14.)

MSM's subsequent reentry plan fails to address Howell's ongoing irreparable damage to his foundational medical knowledgebase and academic record caused by MSM's 2017-18/2018-19 IAHNTA. (*Id.* ¶¶ 26, 55, 78-81, 91, 119-21, 125-32, 138-41, 145, 157-59, 172-76, 203, 238, 270-72, 284-85, 313-28; Doc. 24-7 at 1-3.) MSM's actions violated RA/ADA and Georgia-law.

## I.    Course of Proceedings and Disposition Below

August 14, 2020, Howell's original Complaint [Docs. 1–1-53] was filed bringing RA/ADA claims for failure-to-accommodate, disparate treatment, disparate impact, and retaliation. Original Complaint also brought state-law claims for fraudulent and negligent misrepresentation, punitive damages, and contract breach.

November 17, 2020, Howell's AC [Docs. 24–24-8] was filed bringing additional RA/ADA claim for HLE, and state-law claims for: unjust enrichment, fiduciary duty breach, IIED, and punitive damages. Original Complaint's exhibits [Docs. 1-1–1-53] are associated with AC. (Doc. 33 at 3.)

November 24, 2020, DC entered Scheduling Order. (Doc. 29.) December 2, 2020, discovery was stayed. (Doc. 34 at 2.)

December 29, 2020, MSM filed second motion to dismiss. (Doc. 36.) January 26, 2021, Howell oppositionally responded. (Doc. 37.) February 16, 2021, MSM replied. (Doc. 39.)

September 14, 2021, DC ruled [Doc. 47]:

- Granting dismissal of AC's claims for disparate treatment, disparate impact, retaliation, fraudulent and negligent misrepresentation, contract breach, HLE, IIED, and associated punitive damages;

- Denying dismissal of AC's claims for unjust enrichment, fiduciary duty breach, and associated punitive damages; and

- Denying dismissal of failure-to-accommodate claims but ordering parties to supplementally brief whether claims were moot.

September 28, 2021, MSM answered AC. (Doc. 48.)

September 28, 2021, Howell filed supplemental brief. (Doc. 50.) October 12, 2021, MSM responded. (Doc. 55.) October 19, 2021, Howell replied. (Doc. 56.)

November 1, 2021, MSM filed motion for leave to file surreply. (Doc. 60.) On November 15, 2021, Howell oppositionally responded. (Doc. 63.) November 18, 2021, Howell filed unopposed motion for leave to amend oppositional response. (Doc. 64.) November 29, 2021, MSM replied. (Doc. 68.)

September 28, 2021, Howell filed motion for reconsideration of DC's September 14, 2021 Order. (Doc. 49.) October 12, 2021, MSM oppositionally responded. (Doc. 54.) October 26, 2021, Howell replied. (Doc. 58.)

October 16, 2021, Howell filed second motion for leave to amend his AC.[2] (Doc. 59.) November 9, 2021, MSM oppositionally responded. (Doc. 61.) November 23, 2021, Howell replied. (Doc. 66.)

November 12, 2021, Howell filed third motion for leave to amend his AC.[3] (Doc. 62.) November 26, 2021, MSM oppositionally responded. (Doc. 67.) December 10, 2021, Howell replied. (Doc. 70.)

July 8, 2022, DC ruled [Doc. 74]:

- Denying Howell's motion for reconsideration [Doc. 49];

- Denying Howell's second motion to amend [Doc. 59];

- Denying Howell's third motion to amend [Doc. 62];

- Denying MSM's motion for surreply [Doc. 60] as moot; and

- Granting dismissal of AC's failure-to-accommodate claims as moot.

July 11, 2022, DC entered a Minute-Order vacating September 14, 2021 Order's [Doc. 47] portion denying dismissal of failure-to-accommodate claims.

---

[2] Doc. 59 is misnamed and should be titled, "Plaintiff's **Second** Motion Requesting Leave to Amend his Amended Complaint," and henceforth, referred to as Howell's **second motion to amend** in keeping with DC's orders.

[3] Doc. 62 is misnamed and should be titled, "Plaintiff's **Third** Motion Requesting Leave to Amend his Amended Complaint," and henceforth, referred to as Howell's **third motion to amend** in keeping with DC's orders.

September 8, 2020, Howell filed motion requesting DC decline supplemental jurisdiction over remaining state-law claims. (Doc. 80.) September 22, 2022, MSM oppositionally responded. (Doc. 83.) October 6, 2022, Howell replied. (Doc. 84.)

October 11, 2022, DC declined supplemental jurisdiction over Howell's remaining state-law claims, dismissed claims without prejudice, and entered judgment for MSM; the Clerk was directed to close the file. (Docs. 85-86.) November 9, 2022, Howell timely filed Notice of Appeal regarding the orders and judgment for MSM [Docs. 47, 74, 85-86]. (Doc. 87.)

## II.    Statement of Facts

MSM is a private educational institution receiving federal financial assistance. (Doc. 24 ¶¶ 7-19.) MSM's ODS is authorized to serve as disabled students' primary resource to maximize their academic achievement. (*Id.* ¶¶ 65, 68, 84.)  Marla Thompson (**"Thompson"**) is MSM's ODS Manager and Title IX Coordinator, in charge of determining Howell's eligibility for accommodations, granting accommodations, and managing implementation. (*Id.* ¶¶ 22-23, 35, 51-55, 68-73.)

March 2017, MSM accepted Howell for its MD program's prospective 2021 class, and Howell initiated the interactive accommodation review process (**"IARP"**) providing Thompson confidential psychological reports. (*Id.* ¶¶ 38-42, 45-48, 51-55, 67, 82-83, 164-68.) During IARP, Thompson:

- Was aware of Howell's disability;

9

- Overrode policy by accepting Howell's 2014 psychological evaluation; and

- Communicated MSM could accommodate Howell, including his NTA, and MSM had systems in place to satisfy NTA. (*Id.* ¶¶ 46-56.)

NTA was necessary to ameliorate Howell's disability's effect of preventing meaningful access to MSM and meeting MD program's essential requirements. (*Id.* ¶¶ 78-81.) May 3, 2017, Howell, before agreeing to matriculate May 15, 2017, had provided Thompson all necessary eligibility documentation and relied on Thompson's representations.[4] (*Id.* ¶¶ 57-69.) For Howell's entire MSM education, Thompson granted Howell's NTA with a 24-48-hour turnaround goal for classes. (*Id.* ¶¶ 26, 55, 74-75, 87, 142, 169.) Thompson placed Dr. Brandi Knight (**"Knight"**), Director of the Office of Student Learning and Educational Resources (**"OSLER"**), in charge of providing Howell's notes. (*Id.* ¶¶ 24-34.) Thompson was one of only two officials with authority to receive, investigate, and handle discrimination complaints. (*Id.* ¶¶ 96-97, 100, 102-04, 199.)

2017-18 and 2018-19's courses were taught with heavy lecture emphasis, with students reliant on note-taking for obtaining all necessary information, and classes built upon previous classes. (*Id.* ¶¶ 91-92, 145.) When Howell started 2017-18's

---

[4] Approval takes up to seven working days (until May 12, 2017, for Howell's); Thompson took thirty-two working days, without explanation. (Doc. 24 ¶¶ 70-73.)

classes, **no system was in place for his NTA**. (*Id.* ¶¶ 54-55, 73, 89-90.) Howell's NTA was a new MSM process, with nothing set to work quickly. (*Id.* ¶¶ 109, 112.)

By 2017-18's **fifth week**, Howell, still without NTA, was behind in studies, and complained to Thompson. (*Id.* ¶ 94.) Thompson stated Howell's NTA was requiring MSM to rethink. (*Id.* ¶ 95.) Howell was **never previously warned** NTA would be a new school process, was not an established service for disabled students, or would have delays providing notes. (*Id.* ¶¶ 93, 111.) Howell did not receive notes until thirty-eight days after 2017-18's classes started. (*Id.* ¶ 110.)

**During 2017-18 and 2018-19**:

- Howell received notes for only **61% and 88%** of classes, respectively. (*Id.* ¶¶ 120, 158.) Notes received had a **4.17- and 14.61-day average turnaround time**, respectively. (*Id.* ¶¶ 119, 157.) NTA's 24-48-hour turnaround goal was never evaluated. (*Id.* ¶¶ 124, 163.)

- Howell struggled academically receiving barely passing GPAs: **2.49/4.00** and **2.68/4.00**, respectively. (*Id.* ¶¶ 121, 159.) MSM's ineffective administration of Howell's NTA **("IAHNTA") caused** Howell's struggles. (*Id.* ¶¶ 172, 174; *see also id.* ¶¶ 78-81, 90-92, 112, 117, 144-45, 164-68.) "All courses in the curriculum are required in order to develop essential skills required to become a competent physician." (Docs. 1-4, 1-5, 1-6 at 82, 87, 88, respectively.)

- Howell submitted general complaints to Thompson and Knight about MSM's IAHNTA. (Doc. 24 ¶¶ 112, 118, 146.)

- MSM's proposed remedies were not implemented. (*Id.* ¶¶ 115-16, 147-48.)

- Knight blamed MSM's 2017-18 IAHNTA on notetakers and MSM's 2018-19 IAHNTA on herself stating **timely providing notes was unfeasible**. (*Id.* ¶¶ 114, 149.) Howell's NTA did not change until Knight's leaving near 2018-19's end. (*Id.* ¶¶ 150-51.)

- Howell submitted three written discrimination complaints to Thompson about MSM's IAHNTA. (*Id.* ¶¶ [policy] 96-97, 100, 102, [1st-complaint] 94-95, [2nd-complaint] 133, [3rd-complaint] 152.) Thompson did not handle complaints according to policies. (*Id.* ¶¶ [policy] 102-04, [1st-complaint] 105-08, [2nd-complaint] 134-37, [3rd-complaint] 153-56.)

- Howell **failed** one 2017-18 course due to MSM's IAHNTA requiring independent study remediation.[5] (*Id.* ¶¶ 125-30.) During remediation, Howell's missing notes were not provided. (*Id.* ¶¶ 127, 129-30.) Howell passed remediation with lowest score possible, 70%; Howell's transcript permanently denotes his failing. (*Id.* ¶¶ 131-32.)

---

[5] Remediation is available to all students. (Docs. 1-4, 1-5, 1-6 at 98-99, 104, 105, respectively.)

- At 2017-18's end, MSM suggested Howell decelerate academically (available to all students) inferably from Howell's poor academic performance. (*Id.* ¶¶ 138-39.) Due to MSM's 2017-18 IAHNTA, coupled with Howell's poor grades and emotional turmoil, Howell reluctantly decelerated, splitting up his second-year curriculum and prolonging his medical education to five years. (*Id.* ¶¶ 140-41.)

    **MSM's IAHNTA persisted**:

- **Throughout 2017-18/2018-19**. (*Id.* ¶¶ 117, 144.)

- Despite Thompson reading Howell's difficulties in his updated psychological evaluation, requested by Thompson to continue granting, ironically, Howell's NTA. (*Id.* ¶¶ 164-68.)

    Dr. Ngozi Anachebe **("Anachebe")**, Associate Dean of Admissions and Student Affairs, told Howell medical residency programs, when deciding whether to accept applying MD graduates:

- Take grades into consideration, and **failing grades are judged very unfavorably**. (*Id.* ¶¶ 132, 203 n.7; *see id.* ¶¶ 121, 159, 190 n.6.)

- Take the length of time needed to graduate into consideration, and **taking longer than four years is judged very unfavorably**. (*Id.* ¶ 141.)

    **During 2019-20**, MSM adequately provided for Howell's NTA. (*Id.* ¶ 171.)

    **However, Howell's**:

13

- 2017-18/2018-19's courses were necessary for learning/understanding normal human physiology ("NHP"). (*Id.* ¶ 172.) **MSM's 2017-18/2018-19 IAHNTA prevented Howell's proper learning/understanding of NHP.** (*Id.* ¶ 174.)

- 2019-20's courses were necessary for learning/understanding abnormal human physiology ("AHP"). (*Id.* ¶ 173.) **MSM instructed Howell one could not learn/understand AHP without first learning/understanding NHP.** (*Id.* ¶ 176.) **Howell was unable to learn/understand 2019-20's AHP because he was precluded from first properly learning/understanding NHP because of MSM's 2017-18/2018-19 IAHNTA.** (*Id.* ¶ 175.)

February 2020, Howell notified Anachebe and Thompson about his **current AHP course failings because of** MSM's 2017-18/2018-19 IAHNTA. (*Id.* ¶¶ 178-80; Docs. 1-20, 1-23 at 1; Docs. 1-21, 1-24 at 5-6.) Inferably Howell's complaints were worded to assuage MSM's retribution. (Doc. 24 ¶ 331; Docs. 1-20 and 1-23; Docs. 1-21, 1-24 at 1-7.) Complaints' crux was MSM's 2017-18/2018-19 IAHNTA had "caused significant impairment in [Howell's] learning experience." (Docs. 1-21, 1-24 at 8.) During meeting with Thompson, Howell discovered Knight had notes from previous years and chose not to provide these supplementally to Howell during MSM's 2017-18/2018-19 IAHNTA. (Doc. 24 ¶ 182.) During meeting with Anachebe, Howell was provided email address of MSM's Chief Compliance Officer, Keith Henderson **("Henderson")**; Henderson would not answer Howell's later

14

email. (*Id.* ¶¶ 189, 200.) Anachebe explained MSM's Leave of Absence policy (**"LOA-P"**) would not help Howell's current AHP course failings and LOA-P is not for resolving "academic difficulties." (*Id.* ¶¶ 188, 190; Docs. 1-4, 1-5, 1-6 at 71, 75, 77, respectively.) Neither Anachebe nor Thompson were concerned about Howell's failings or emotional turmoil, and Howell was unaware who else he could ask for help. (Doc. 24 ¶¶ 181, 184-87, 191-92; Docs. 1-21, 1-24 at 1-6; Docs. 1-25, 1-26 at 1-2; Doc. 1-29 at 3.) *Contra* Doc. 1-51 at 1 (Anachebe advertises MSM's atmosphere enhances student's emotional well-being).

March 28, 2020, Howell filed compliance complaint outlining his current AHP course failings because of MSM's 2017-18/2018-19 IAHNTA. (Doc. 24 ¶ 201; Doc. 1-28 at 1, 4.) Howell's complaint was investigated by Alecia Bell (**"Bell"**), Interim Chief Compliance Officer. (Doc. 24 ¶ 202.) In support, Howell conducted statistical analyses of NTA for 456 classes comprising 2017-18/2018-19. (*Id.* ¶ 267; Doc. 1-29 at 3; Doc. 1-28 at 1.) In further support, Howell researched his disability rights and uploaded a discrimination brief to his compliance complaint (Doc. 1-29 at 3; Doc. 1-28 at 4), inferably after March 31, 2020,[6] demonstrating more of Howell's Spring 2020 semester spent on seeking resolutions for ongoing harm caused by MSM's IAHNTA. (Doc. 24 ¶ 267.) It can be inferred from Thompson and

---

[6] Howell's brief, the eighth file uploaded and accompanied by eighteen exhibits, was uploaded after March 31, 2020's first six attachments. (Doc. 1-28 at 4-5.)

Anachebe's indifference,[7] Henderson's not answering Howell's email, Howell not knowing whom else he could ask for help, and Howell's emotional turmoil, that Howell attempted to put forth strongest case possible. (*Id.* ¶¶ 191, 200; Doc. 1-25 at 1; Doc. 1-29 at 3.) Howell was forced to miss March 2020 exams, after he was already failing, because of time required by aforementioned activities. (Doc. 24 ¶ 267; Doc. 1-29 at 3; Docs. 1-20, 1-23 at 1; Docs. 1-21, 1-24 at 5-6; Doc. 1-28 at 1-4.) Bell's report acknowledged MSM's IAHNTA from August 2017 to March 22, 2019, but did not address retaliation claim against Thompson and Anachebe. (Doc. 24 ¶¶ 223-24, 237-41, 245.) Howell faults Bell's report for its sparsity of factual findings and lack of transparency for a three-and-a-half-month-long investigation, and its self-serving nature regarding MSM's accreditation process. (*Id.* ¶¶ 235-49.)

**Howell failed 2019-20's courses due to lack of solid foundational medical knowledgebase caused by MSM's 2017-18/2018-19 IAHNTA**. (*Id.* ¶¶ 172-76, 190, 203, 266-67.) Howell's overall GPA, 2.02/4.00, is barely passing. (Doc. 1-14 at 3.)

Howell's dismissal hearing was scheduled and decided by MSM's Student Academic Progress and Promotions (SAPP) Committee **("Committee")**. (Doc. 1-6 at 106-09; Docs. 1-30 and 1-39 at 4; Doc. 1-46 at 2.) Howell's rescheduled dismissal

---

[7] Howell's complaint included retaliation claims against Anachebe and Thompson. (Doc. 24 ¶¶ 178-99; Doc. 1-28 at 1-2.)

hearing was held July 28, 2020. (Doc. 24 ¶¶ 206-16, 219-21, 229, 251.) Prior to hearing, Howell submitted exhibits. (*Id.* ¶¶ 252-55, 260, 271.)

During hearing, Howell stressed:

- NTA was necessary for Howell's meaningful access to MSM. (*Id.* ¶¶ 264-65.)

- Time periods of MSM's 2017-18/2018-19 IAHNTA were necessary for Howell's learning/understanding of NHP; students cannot learn/understand AHP (2019-20's courses Howell failed) without first learning/understanding NHP; and Howell was unable to properly learn/understand NHP because of MSM's 2017-18/2018-19 IAHNTA. (*Id.* ¶ 266; Doc. 1-44 ¶¶ 31-36; Doc. 1-44 at 22-27.)

- MSM's 2017-18 IAHNTA forced Howell's academic deceleration. (Doc. 1-44 ¶ 22; Doc. 1-44 at 20, 25.)

- Howell's many resolution attempts and his emotional distress. (Doc. 24 ¶ 267; Doc. 1-44 ¶¶ 17, 25, 37-56; Doc. 1-44 at 10-29.)

During hearing, Committee:

- Knew of MSM's 2017-18/2018-19 IAHNTA. (Doc. 24 ¶ 313; Doc. 1-44 ¶¶ 37-56; Doc. 1-44 at 10-27; Doc. 24-6 at 2-3.)

- **Determined Howell's NTA non-essential**. (Doc. 24 ¶¶ 262-63.)

- Knew of Howell's compliance complaint. (*Id.* ¶ 268.)

- Was required to consider "all information relative to [Howell's] academic performance in the total curriculum[.]" (Doc. 1-6 at 104.)

17

Committee dismissed Howell because he (1) failed 2019-20's courses and (2) had already spent three years within MSM's first- and second-year curriculum by 2019-20's end. (Doc. 24 ¶¶ 270-72.)

Contrary to policies, Howell was never provided notice that one reason for his hearing and MSM's later dismissal decision was Howell already spent three years within MSM's first- and second-year curriculum by 2019-20's end. (*Id.* ¶¶ 273-74; Docs. 1-30 and 1-39 at 4.) Howell was precluded from defending himself about this reason and Committee never brought it up during hearing. (Doc. 24 ¶ 275.) "**[D]ismissal hearing is the student's only opportunity to present supportive information pertinent to the grounds for their dismissal.**" (Doc. 1-6 at 108.)

MSM dismissed Howell after Bell confirmed MSM's 2017-18/2018-19 IAHNTA and after Bell **asked Howell to give MSM opportunity to provide solutions regarding his compliance complaint**. (Doc. 24 ¶¶ 229, 238, 245, 249, 281.)

After Howell **timely** submitted August 13, 2020 intent-to-appeal letter to Dr. Valerie Montgomery Rice **("Rice")**, President and Dean, Rice **untimely** overturned Howell's dismissal on September 15, 2020, citing MSM's 2017-18/2018-19 IAHNTA and dismissal lacking sufficient evidence.[8] (*Id.* ¶¶ 306-14.)

---

[8] Original Complaint's prayers for reinstatement **are removed** in AC because at filing time, Howell's dismissal was overturned. (*Compare* Doc. 1 at 230-36 *with* Doc. 24 at 328-34.)

September 16, 2020, Dr. Martha Elks (**"Elks"**), Senior Associate Dean of Educational Affairs, submitted MSM's reentry plan to Howell. (*Id.* ¶ 315.) MSM's plan sought Howell's return **to same prejudicial position** as when he first failed AHP courses by:

- Only allowing Howell to retake 2019-20's AHP failed courses despite Rice's overturning Howell's dismissal citing MSM's 2017-18/2018-19 IAHNTA, which caused Howell's 2019-20 failings. (*Id.* ¶¶ 172-76, 238, 313, 316, 325; Doc. 24-7 at 1-3.)

- Throwing Howell into AHP courses after Pathology's first exam, material which is necessary for learning further pathology material. (Doc. 24 ¶ 317.)

- Charging Howell tuition to retake AHP courses. (*Id.* ¶¶ 315, 318, 320.)

- Not addressing Howell's ongoing irreparable damage to his foundational medical knowledgebase and academic record caused by MSM's 2017-18/2018-19 IAHNTA. (*Id.* ¶¶ 132, 141, 172-76, 203, 203 n.7, 315-20, 324-28.)

September 20, 2020, Howell told Elks MSM's plan was inequitable and prejudicial, and he wished to wait for DC's guidance about requested relief. (*Id.* ¶ 319; Doc. 24-7 at 1.) During September 22, 2020 meeting, Elks acknowledged Howell's NTA did not provide good notes and many disconnects exist within MSM. (Doc. 24 ¶¶ 321-23.) MSM opposes Howell restarting his medical education and

earning new grades that reflect Howell's academic potential when provided all granted accommodations. (*Id.* ¶¶ 285, 327-28.)

Howell took out loans to attend MSM totaling $202,773.00 with presently accrued interest. (*Id.* ¶ 332.) MSM has taken away any reasonable opportunity for Howell to study or practice medicine. (*Id.* ¶¶ 283-84.) Howell has suffered severe emotional distress and loss of educational opportunities, employment opportunities, research opportunities, and future income. (*Id.* ¶¶ 140, 187, 219, 287, 356-57, 419-20, 447-48, 504-05, 875-77.)

## III.  Standard of Review

This Court reviews motions to dismiss decisions de novo and must accept complaint's allegations as true and construe them in the light most favorable for plaintiff. *Powell v. Thomas*, 643 F.3d 1300, 1302 (11th Cir. 2011). The court limits consideration to the pleadings and the exhibits attached. FED. R. CIV. P. 10(c); *Thaeter v. Palm Beach Cty. Sheriff's Off.*, 449 F.3d 1342, 1352 & n.7 (11th Cir. 2006).

Whether a case is moot is a question of law this Court reviews de novo. *Sheely v. MRI Radiology Network, P.A.*, 505 F.3d 1173, 1182 (11th Cir. 2007).

This Court reviews DC's decision to enforce its pre-trial order for abuse of discretion. *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1418 (11th Cir. 1998).

This Court reviews DC's determination of state law de novo. *Ins. Co. of N.A. v. Lexow*, 937 F.2d 569, 571 (11th Cir. 1991), *certified question answered,* 602 So. 2d 528 (Fla. 1992).

## IV. Summary of Argument

DC improperly construed facts and inferences in MSM's favor and omitted relevant material facts altogether, reaching the following incorrect conclusions.

DC erred dismissing failure-to-accommodate claim's requested relief of damages under RA. Thompson was MSM's only official with authority to grant/provide for Howell's NTA. Thompson assigned the administration responsibility to another employee. Thompson received Howell's multiple complaints about MSM's ineffective administration of Howell's NTA (**"IAHNTA"**). Thompson was one of two officials with authority to receive, investigate, and handle Howell's complaints. Thompson did not handle Howell's complaints in accordance with MSM's policies. MSM's IAHNTA persisted for nearly two years.

DC erred ruling requested relief of restarting medical education with deletion of prior academic record was improper under RA/ADA. MSM's 2017-18/2018-19 IAHNTA has caused ongoing irreparable harm to Howell's:

- Foundational medical knowledgebase preventing Howell's success in 2019-20's courses failed and in Howell's future education and career. MSM told Howell this consequence would happen.

- Academic record (failing grades, low GPA, and academic record longer than four years). MSM said these effects would damage Howell's eligibility for acceptance into medical residency programs.

DC originally ruled failure-to-accommodate claims sufficiently pled under RA/ADA. DC later erred ruling these claims moot because no meaningful relief existed. Explained herein, DC erred dismissing failure-to-accommodate claim's requested relief of damages and Howell restarting medical education with deletion of prior academic record.

DC erred dismissing disparate treatment claims under RA/ADA, ruling AC failed to offer factual allegations showing Howell's disability was motivating factor, or sole reason for, MSM's dismissal decision. MSM's cited reasons for dismissing Howell were consequences Howell suffered because of MSM's 2017-18/2018-19 IAHNTA. During dismissal hearing, MSM determined Howell's NTA non-essential. After overturning Howell's dismissal, MSM's reentry plan was adverse because it ignored ongoing irreparable damage to Howell's foundational medical knowledgebase and academic record, which MSM said would happen and caused by MSM's 2017-18/2018-19 IAHNTA.

DC erred dismissing IIED claim, ruling AC did not establish MSM's conduct was extreme and outrageous, and Howell's resulting emotional distress was severe. Howell enjoyed a confidential relationship with MSM wherein MSM exhibited wanton disregard of Howell's rights. MSM's conduct was extreme and outrageous. Howell suffers from both physical and mental manifestations of emotional distress, requiring medical treatment. Howell's emotional distress is severe.

DC erred dismissing fraud/negligent misrepresentation claims, ruling Howell failed to allege justifiable reliance. DC erred because it solely focused on Thompson's representation that Howell's NTA would come with 24-48-hour turnaround goal for classes. DC ignored Howell's reliance on Thompson's representation that a system was in place at MSM to satisfy Howell's NTA and provide notes for him, a disabled student.

DC's denial of third motion to amend was abuse of discretion, ruling Howell failed to demonstrate diligence. Howell's diligence is inferable because new information necessary to assert viable sex and race claims only became available after Scheduling Order's amendment deadline. Upon Howell's discovery of the new information, third motion to amend was filed within 30 days.

## ARGUMENT

This Court draws "all reasonable inferences in a plaintiff's favor." *Bailey v. Wheeler*, 843 F.3d 473, 480 (11th Cir. 2016). "A claim has facial plausibility when

the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). "[A]t this stage, when there are two equally plausible ways to read a complaint, we should adopt the reading that is most favorable to Appellants." *Worthy v. City of Phenix City, Alabama*, 930 F.3d 1206, 1214 (11th Cir. 2019). The "[f]actual allegations [in the complaint] must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 1217 (quoting *Bell A. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)).

"A complaint may not be dismissed for failure to state a claim under Rule 12(b)(6) 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Thaeter v. Palm Beach Cty. Sheriff's Off.*, 449 F.3d 1342, 1352 (11th Cir. 2006) (quoting *Magluta v. Samples,* 256 F.3d 1282, 1283-84 (11th Cir. 2001) (per curiam)).

Federal courts applying state law are bound to adhere to decisions of state's intermediate appellate courts absent persuasive indication the state's highest court would decide otherwise, no matter if federal courts agree with reasoning the state court's decision is based on or the outcome the decision dictates. *Silverberg v. Paine, Webber, Jackson & Curtis, Inc.*, 710 F.2d 678, 690 (11th Cir. 1983).

### A. *Disability Discrimination*

MSM is a private educational institution receiving federal financial assistance. (Doc. 24 ¶¶ 7-19.) "Both the ADA and the RA prohibit discrimination on the basis of disability by an institution of higher education." *J.A.M. v. Nova S.E. U., Inc.*, 0:15-CV-60248-KMM, 2015 WL 4751149, at *3 (S.D. Fla. Aug. 12, 2015), *aff'd,* 646 Fed. Appx. 921 (11th Cir. 2016)(unpublished). "Discrimination claims under the [RA] are governed by the same standards used in ADA cases[.]" *Cash v. Smith*, 231 F.3d 1301, 1305 (11th Cir. 2000). Actions of MSM's employees herein were in furtherance of and within MSM's business scope. (Doc. 24 ¶ 329.)

#### 1. Failure-to-Accommodate

DC ruled failure-to-accommodate claims [Counts I, III] sufficiently pled. (Doc. 47 at 44-48.) DC later ruled failure-to-accommodate claims moot because no meaningful relief existed. (Doc. 74 at 33-34.) Explained *infra*-Section IV.A.1.d, DC's mootness ruling erred.

> If establishing discrimination by failure to make reasonable accommodation, a plaintiff must merely show that (1) he was disabled, (2) he was otherwise qualified, and (3) a reasonable accommodation was not provided.

*Nadler v. Harvey*, 06-12692, 2007 WL 2404705, at *5 (11th Cir. Aug. 24, 2007) (citing *Lucas v. W.W. Grainger, Inc.,* 257 F.3d 1249, 1255 (11th Cir. 2001)).

First, Howell is disabled (Doc. 24 ¶¶ 38-42, [Count-I] 335, [Count-III] 425.)

Second, Howell is qualified. (*Id.* ¶¶ 43-47, 66-67, 75-83, 87, 142, 169, [Count-I] 337-38, [Count-III] 426-27.) The relevant time to evaluate whether individual is qualified is upon accommodations request. *Redding v. Nova Se. Univ., Inc.*, 165 F. Supp. 3d 1274, 1294-95 (S.D. Fla. 2016).

Third, Howell's NTA was necessary for meeting MD program's essential requirements. (Doc. 24 ¶¶ 78-81, 91, 145.) *See Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285-86 (11th Cir. 1997) (plaintiff's burden is identifying accommodation enabling satisfaction of essential requirements). **During 2017-18/2018-19**, MSM ineffectively administered Howell's **granted**-NTA. (Doc. 24 ¶¶ 26, 55, 75, 87, 90-91, 117-24, 142-46, 157-60, 163, [Count-I] 343-50, [Count-III] 429-42.)

### a. Continuing Violation and Hostile Learning Environment

MSM's 2017-18/2018-19 ineffective administration of Howell's NTA **("IAHNTA")** was not a discrete act. *See Abram v. Fulton County Govt.*, 598 Fed. Appx. 672, 676 (11th Cir. 2015)(unpublished) (failure to grant requested accommodation involved discrete acts). Howell alleged continuing violation by MSM's IAHNTA. (Doc. 24 ¶¶ [Count-I] 346, 348-49, 355, [Count-II] 434-40, 446.) DC ruled failure-to-accommodate claims sufficiently alleged continuing violation under RA/ADA-Title III and not time-barred. (Doc. 47 at 43-44.) DC dismissed Howell's HLE claim [Count-XII]. (Doc. 47 at 57-58.). Should this Court decide

26

MSM's IAHNTA is not failure-to-accommodate, then DC erred dismissing HLE claim which must then prevail. (Doc. 24 ¶¶ 701-06, 710-22; *infra*-Sections IV.A.1.b-c.) *Natl. R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 103 (2002). The texts of Title IX and RA are virtually identical. *Liese v. Indian River County Hosp. Dist.*, 701 F.3d 334, 346 (11th Cir. 2012). Title IX hostile environment claims are available against teacher-student harassment. *Davis Next Friend LaShonda D. v. Monroe County Bd. of Educ.*, 526 U.S. 629, 653 (1999).

### b. Deliberate Indifference

To be awarded compensatory damages for failure-to-accommodate [Count I] under RA, Howell must prove MSM "engaged in intentional discrimination, which requires a showing of 'deliberate indifference.'" *Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1134 (11th Cir. 2019) (citation omitted). Deliberate indifference requires proof MSM knew harm to Howell's federally protected right was substantially likely and failed to act. *Id.*

DC erred ruling Howell pled insufficient facts to plausibly allege MSM's deliberate indifference or Thompson had substantial supervisory authority or complete discretion at a key decision point in the administrative process providing for Howell's 2017-18/2018-19 NTA. (Doc. 47 at 60-61; Doc. 74 at 11.)

As a disabled student, Howell's primary resource for accommodations and disability concerns was ODS. (Doc. 24 ¶¶ 68, 84.) Thompson was MSM's **ODS**

27

**Manager** and Title IX Coordinator. (*Id.* ¶ 22.) Thompson was in charge of determining Howell's eligibility for accommodations, granting accommodations, and managing their implementation. (*Id.* ¶¶ 22-23, 35, 51-55, 61, 68-73, 84.) Thompson overrode MSM's policy by accepting Howell's 2014 psychological evaluation despite it being older than three years. (*Id.* ¶ 51.) Thompson had the authority to assign Knight to oversee Howell's NTA. (*Id.* ¶¶ 24-34.) **Thompson was one of only two officials** with authority to receive, investigate, and handle Howell's written discrimination complaints about MSM's ineffective administration of Howell's NTA **("IAHNTA")**.[9] (*Id.* ¶¶ 96-97, 100, 102-04.)

During 2017-18/2018-19, Howell:

- Submitted general complaints to Thompson about NTA's untimeliness and inconsistencies (*Id.* ¶¶ 112, 118, 146); and

- Submitted three written discrimination complaints to Thompson about MSM's IAHNTA. (*Id.* ¶¶ [policy] 96-97, 100, 102, [1st-complaint] 94-95, [2nd-complaint] 133, [3rd-complaint] 152.)

Howell's three written discrimination complaints were not handled by Thompson in accordance with MSM's policies. (*Id.* ¶¶ [policy] 102-04, [1st-complaint] 105-08,

---

[9] The other being Deputy Title IX Coordinator, a position subordinate to Thompson's, Title IX Coordinator. (Doc. 24 ¶¶ 96-97, 100.) Deputy Title IX Coordinator was only authorized to accept written discrimination complaints during 2017-18. 2018-19/2019-20 student handbooks list only Thompson. (*Id.* ¶ 102.)

[2nd-complaint] 134-37, [3rd-complaint] 153-56.) *See Silberman*, 927 F.3d at 1135

("[A]n 'official' needn't be so high . . . But she must be high enough that her actions

'constitute an official decision by the [entity] itself not to remedy the misconduct.'"

(citation omitted)). Thompson was further aware of Howell's hardships because the

issue of MSM's IAHNTA, and the foretelling of Howell's future academic difficulty,

was outlined in the updated psychological evaluation Thompson requested, received,

and subsequently read **to continue granting Howell's NTA**. (Doc. 24 ¶¶ 164-68.)

Thompson knew harm to Howell's federally protected right was substantially likely

and failed to act. (*Id.* ¶¶ 279, 353, 444.) In a light most favorable to Howell,

Thompson had complete discretion in the key administrative process to decide

whether Howell's NTA was provided during 2017-18/2018-19. *Liese v. Indian River

Cty. Hosp. Dist.*, 701 F.3d 334, 350 (11th Cir. 2012). These facts contradict DC's

findings, "the [AC] does not allege that Thompson's decisions themselves were not

reviewable," and "none of the allegations cited by Howell from the [AC] plausibly

show that Thompson had any supervisory authority." (Doc. 74 at 13.)

> DC erred, concluding,
>
> Thompson told Howell that he needed to contact Dr. Ngozi
> Anachebe . . . about her [sic] NTA concerns. [Doc. 24] ¶ 185 . . . And
> even when Howell informed Thompson that Anachebe told him that
> she was not involved in accommodations, there is nothing alleged to
> show that Thompson retained any independent authority over the
> administration process.

(Doc. 74 at 13-14 (citation omitted).) Thompson did not meet with Anachebe to

discuss Thompson's concerns about Howell's NTA. Thompson met with Anachebe on March 5, 2020, during **2019-20**, to discuss **Howell's then suggested remedies** brought up to Thompson for the consequences incurred by Howell due to MSM's **2017-18/2018-19** IAHNTA. (Doc. 24 ¶¶ 181, 184-85, 192.) Thompson met with Anachebe to discuss **Howell's concerns** because Thompson could not address Howell's suggested remedies. (*Id.* ¶¶ 181, 184.) These remedies would **not be disability-based academic accommodations provided by Thompson's ODS** and were outlined in the exhibit cited in Paragraph 185 of Howell's AC, which DC erroneously cites above:

> The **concerns** you identified that I confirmed to be **non-ODS decisions** were shared with Dr. Anachebe. For example, your **concern involving tuition** is not a matter that the ODS is able to decide.

(Doc 1-25 at 1 (emphasis added).) Thus, this **2020** meeting had nothing to do with an MSM official deciding whether to provide Howell's NTA during **2017-18/2018-19**. Nothing alleged shows Anachebe, during **2019-20**, removed, or had authority to remove, Thompson's independent authority regarding Howell's NTA during **2017-18/2018-19**, or even during 2019-20. Thompson's authority regarding Howell's NTA came from MSM, not Anachebe (Doc. 24 ¶¶ 22, 68, 84), as evidenced because:

- Anachebe could not address Howell's accommodations. (*Id.* ¶¶ 179, 186.)

- After Howell sent Anachebe his February 2020 complaint detailing Howell's current course failings because of MSM's 2017-18/2018-19 IAHNTA, Anachebe

pushed Howell to Thompson because Anachebe had no authority. (*Id.* ¶¶ 178-79; Doc. 1-22; Doc. 1-26.)

Nothing alleged suggests Anachebe could overrule Thompson's complete discretion in the key administrative process of deciding whether Howell's NTA was provided during 2017-18/2018-19.

Howell has sufficiently pled deliberate indifference and sufficient factual allegations demonstrating Thompson had substantial supervisory authority and complete discretion at a key decision point in the administrative process providing for Howell's 2017-18/2018-19 NTA.

### c. *Available Relief*

Article III standing requires three elements: "(1) 'injury-in-fact'; (2) 'a causal connection between the asserted injury-in-fact and the challenged action of the defendant'; and (3) 'that the injury will be redressed by a favorable decision.'" *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1328 (11th Cir. 2013) (citation omitted).

Regarding failure-to-accommodate claims [Counts I, III], DC erred ruling, "Howell's requested relief of restarting his entire medical education with a deletion of his entire prior academic record is improper under the ADA or the RA." (Doc. 47 at 61-62 (quoting *Wilf v. Bd. of Regents of the Univ. Sys. of Ga.*, No. 1:09-CV-1877-RLV, 2010 WL 11469573, at *3 (N.D. Ga. July 6, 2010)).) DC's reliance on *Wilf*,

2010 is misguided. It is unclear what "prior order" the court in *Wilf*, 2010 WL 11469573, at \*3 references; DC does not specify. Presumably it references *Wilf v. Bd. of Regents of the Univ. System of Georgia*, 1:09-CV-1877-RLV, 2009 WL 10658152, at \*1 (N.D. Ga. Sept. 29, 2009) wherein plaintiff asked the court to change his course grade "from an 'F' to a 'D' or 'K'[.]" *Id.* The court in *Wilf*, 2009 ruled:

> Without a showing that the balance of hardships favor him by demonstrating either that he has experienced "irreparable harm" or there is another compelling reason . . . the court is unable to grant the relief[.]

*Id.* at \*3. Accordingly, *Wilf* is inapposite because **Howell has pled** MSM's ineffective administration of Howell's NTA **("IAHNTA")** has caused **continuing irreparable harm** to Howell's foundational medical knowledgebase and academic record. This is Article III-standing's **first element**.

First, regarding Howell's request to restart medical school, MSM's **2017-18/2018-19** IAHNTA has caused **ongoing irreparable harm** to Howell's **foundational medical knowledgebase**. (Doc. 24 ¶¶ 26, 55, 78-81, 91-92, 117, 119-32, 144-45, 157-60, 163.) This lack of foundational medical knowledgebase prevents Howell's success in **2019-20's** courses he failed and in Howell's future education and career. (*Id.* ¶¶ 172-76, 190, 203, 266, 324-25; Docs. 1-20, 1-23 at 1; Docs. 1-21, 1-24 at 1-7.) **MSM told Howell this consequence would happen**. (Doc. 24 ¶¶ 172-76.) Howell notified MSM past halfway through 2019-20 that he was currently

failing 2019-20's courses because of this lack of foundational medical knowledgebase. (Docs. 1-20, 1-23 at 1; Docs. 1-21, 1-24 at 5-6; Doc. 1-28 at 1, 4; Doc. 24 ¶¶ 178-80, 201.) MSM dismissed Howell because he failed 2019-20's courses; on appeal, MSM overturned Howell's dismissal citing MSM's 2017-18/2018-19 IAHNTA. (Doc. 24 ¶¶ 313-14.) Should Howell only retake 2019-20's courses he failed, he would be **right back in same prejudicial position** as when he first failed these courses. (*Id.* ¶¶ 315-19.) Thus, Howell has pled "a sufficient likelihood that he will be affected by the allegedly unlawful conduct in the future." *Wooden v. Bd. of Regents of U. System of Georgia*, 247 F.3d 1262, 1283 (11th Cir. 2001). Howell has pled "facts giving rise to an inference that he will suffer *future* discrimination by the defendant." *Houston*, 733 F.3d at 1334-35 (citation omitted). This is Article III-standing's **second element**.

Second, regarding Howell's requested relief of deleting his previous academic record, MSM's **2017-18/2018-19** IAHNTA has simultaneously caused **ongoing irreparable harm** to Howell's **academic record** (failing grades, low GPA, and academic record longer than four years). (Doc. 24 ¶¶ 121, 125-32, 138-41, 159, 203, 270, 324.) **MSM told Howell these effects would damage his eligibility for acceptance into medical residency programs**. (*Id.* ¶¶ 132, 141, 203 n.7.) It matters not that Howell's injuries would come from a third-party because Howell has been injured by MSM's actions through "determinative or coercive effect upon the action

of someone else." *Bennett v. Spear*, 520 U.S. 154, 169 (1997). These third-parties are medical residency programs, and their actions are what MSM told Howell would happen. (Doc. 24 ¶¶ 132, 141, 203 n.7.) Howell's theory of harm "does not rest on mere speculation about the decisions of third parties; it relies instead on the predictable effect of [the Defendant's] action on the decisions of third parties." *Dept. of Com. v. New York*, 139 S.Ct. 2551, 2566 (June 27, 2019). *See Segev v. Lynn U., Inc.*, 19-CV-81252, 2021 WL 2269838, at *9 (S.D. Fla. Feb. 26, 2021), *report and recommendation adopted,* 19-81252-CIV, 2021 WL 1996437 (S.D. Fla. May 19, 2021) (defendant's action not required to be sole source of injury, and causation may be found even with multiple links in chain connecting defendant's unlawful conduct to plaintiff's injury (citations omitted)). *See Constr. Aggregate Transport, Inc. v. Fla. Rock Industries, Inc.*, 710 F.2d 752, 782-83 (11th Cir. 1983) ("[W]here damages may have been caused by number of factors plaintiff need not prove defendant's actions were sole proximate cause; plaintiff must only show with fair degree of certainty that defendant's conduct materially contributed to injury."). This is Article III-standing's **second element**.

MSM's actions have caused Howell's continuing loss of educational, employment, and research opportunities. (Doc. 24 ¶¶ 287, 357, 448.) Howell must be able to restart his medical education, with his NTA effectively administered

beginning on his first day of class,[10] ensuring Howell has a meaningful opportunity to obtain a solid foundational medical knowledgebase required for academic success in his courses and his future medical education and career. (*Id.* ¶¶ 172-76, 324-25.) Additionally, Howell's academic record must be deleted so he is not forever prejudiced by it damaging his viability for acceptance into medical residency programs. (*Id.* ¶¶ 132, 141, 203 n.7, 324, 326.) *See Segev*, 2021 WL 2269838, at *9 ("An Amended transcript would redress these injuries."). This is Article III-standing's **third element**. Despite MSM overturning Howell's dismissal citing MSM's IAHNTA, MSM opposes Howell's requested relief, **ensuring Howell's continuing injuries**. (Doc. 24 ¶¶ 313-14, 324-28.)

Unlike *Wilf*, 2009, Howell does not seek grade change to *skip through* studies. Howell seeks to *restart* his education, with academic record deleted, and with NTA effectively administered day one. In *Redding*, when ruling if student's request for accommodations is unnecessary if student merely passes courses without said accommodation, the court ruled "[p]articipation in an academic program cannot be defined so narrowly." *Redding v. Nova Se. Univ., Inc.*, 165 F. Supp. 3d 1274, 1299 (S.D. Fla. 2016). "Academic achievement is measured by more than pass/fail." *Id.* "Meaningful participation and access to an academic program includes

---

[10] Howell did not start receiving notes until thirty-eight days after 2017-18 started. (Doc. 24 ¶ 110.)

the *opportunity* to advance to the next academic year on the regular schedule and to achieve one's academic potential on a level playing field with one's peers." *Id.* Accordingly, relief of correcting ongoing academic and career damages caused by MSM's IAHNTA, which MSM granted Howell, is appropriate under RA/ADA. Where "legal rights have been invaded" and federal statute provides "right to sue[,]" courts may use any available remedy to "make good the wrong done." *Barnes v. Gorman*, 536 U.S. 181, 189 (2002).

DC erred ruling Howell did not have standing because he had not accepted MSM's reentry plan. (Doc. 47 at 62 (citing *Alejandro v. Palm Beach State Coll.*, 843 F. Supp. 2d 1263, 1273 (S.D. Fla. 2011)).)

First, *Alejandro* does not support DC's ruling. MSM's students do not enroll themselves, and when Howell's AC was filed, **Howell was already enrolled by MSM in 2019-20's courses he failed** (MSM's reentry plan). (Doc. 24 ¶¶ 315-20.) MSM decided Howell could only take these courses and was charging him tuition. (*Id.* ¶¶ 315-20.) Howell has prospective relief standing. *See Trichell v. Midland Credit Mgt., Inc.*, 964 F.3d 990, 1002-03 (11th Cir. 2020) ("[C]ourts must assess Article III standing as of when a complaint is filed.").

Second, Eleventh Circuit courts have distinguished differing criteria for standing. *See Redding*, 165 F. Supp. 3d at 1295 ("As a dismissed student without a

valid claim for readmission, Redding lacks standing to pursue prospective relief.").[11]
Unlike *Redding*, when Howell's AC was filed, MSM had overturned Howell's dismissal citing MSM's IAHNTA. (Doc. 24 ¶¶ 313-14.) Howell has valid claim for readmission and prospective relief standing.

Third, Howell wishes to complete his education at MSM. (*Id.* ¶ 285.) Howell did not accept MSM's reentry because it did not address **ongoing irreparable harm** to Howell's foundational medical knowledgebase and academic record, caused by MSM's 2017-18/2018-19 IAHNTA. (*Id.* ¶¶ 132, 141, 172-76, 203, 203 n.7, 315-20, 324-28; Doc. 24-7 at 1-3.) Questions also arose after Elks acknowledged NTA did not provide good notes and many disconnects existing within MSM. (Doc. 24 ¶¶ 321-23.) It is error to rule Howell, after MSM overturned his dismissal citing MSM's IAHNTA, must first accept MSM's reentry plan to only then have standing for challenge.

Had Howell accepted the plan just to challenge:

- Howell would have had to accept tens of thousands of dollars of additional student loan debt. (*Id.* ¶ 318.) *See Redding*, 165 F. Supp. 3d at 1300 (Redding's

---

[11] Redding lacked standing because she failed identifying accommodation allowing her to meet program's essential requirements, therefore not qualified when dismissed. *Redding v. Nova Se. Univ., Inc.*, 165 F. Supp. 3d 1274, 1294 (S.D. Fla. 2016).

dismissal may not have occurred if requested accommodations were granted and record was unclear if Redding had to pay extra tuition to repeat courses).

- Howell would have been required *to endure* it before DC's rulings.[12] The courts' deference to MSM is not absolute, and the courts still hold final responsibility for enforcing RA/ADA. *Redding*, 165 F. Supp. 3d at 1292.

Howell's requested relief is proper and available under RA/ADA. MSM has taken away any reasonable opportunity for Howell to ever study or practice medicine. (Doc. 24 ¶ 284.)

### d. Mootness

"A case is moot when it no longer presents a live controversy with respect to which the court can give meaningful relief." *Ethredge v. Hail*, 996 F.2d 1173, 1175 (11th Cir. 1993). A partial remedy "is sufficient to prevent mootness." *SunAmerica Corp. v. Sun Life Assur. Co. of Canada*, 77 F.3d 1325, 1333 (11th Cir. 1996).

DC erred ruling failure-to-accommodate claims [Counts I, III] moot. (Doc. 74 at 34.) Explained *supra*-Section IV.A.1.b, DC erred ruling Howell insufficiently pled factual allegations plausibly alleging MSM's deliberate indifference. Explained

---

[12] August 14, 2020, Howell filed action. (Doc. 1.) September 15, 2020, MSM overturned Howell's dismissal. (Doc. 24 ¶ 313.) September 16, 2020, MSM presents reentry plan to Howell. (*Id.* ¶ 315.) **September 14, 2021**, DC's Order on motion to dismiss. (Doc. 47.)

*supra*-Section IV.A.1.c, DC erred ruling Howell's requested relief of restarting medical school and deleting his academic record was not available/proper relief.

July 2022, DC erred ruling MSM's overturning Howell's dismissal deprives DC's ability to grant meaningful relief. (Doc. 74 at 34.) MSM's overturning Howell's dismissal **citing** MSM's 2017-18/2018-19 ineffective administration of Howell's NTA **("IAHNTA")** does nothing if subsequent reentry plan is just adverse by ignoring Howell's ongoing irreparable damages **caused by** MSM's 2017-18/2018-19 IAHNTA, **which caused Howell's dismissal**. (*See supra*-Section IV.A.1.c; *infra*-Section IV.A.2.) Further, October 2021, MSM, utilizing subterfuge, notified DC that Howell was now permanently dismissed. ([Dismissal] Doc. 55 at 8-9; [Subterfuge] Doc. 24 ¶ 214; Doc. 24-7 at 1-2; Doc. 56 at 11-18; Doc. 56-1; Doc. 56-3 at 1-2; Doc. 56-4 ¶¶ 7-15; Doc. 64-1 at 14-16.) *See Al Najjar v. Ashcroft*, 273 F.3d 1330, 1336 (11th Cir. 2001) (regarding court's ability to grant meaningful relief, mootness evaluation considers events post-filing).

## 2.  Disparate Treatment

DC erred dismissing disparate treatment claims [Counts II, IV], ruling "Howell fails to offer factual allegations showing that his disability was a motivating factor in MSM's decision to dismiss him, or that his disability was the sole reason for his dismissal." (Doc. 47 at 49, 51.)

[T]o establish a prima facie case of discrimination under the ADA, [a plaintiff] must demonstrate that [he] (1) is disabled, (2) is a qualified

individual, and (3) was subjected to unlawful discrimination because of [his] disability.

*Cash v. Smith*, 231 F.3d 1301, 1305 (11th Cir. 2000).

Howell is disabled and qualified. (Doc. 24 ¶¶ 38-47, 66-67, 75-83, [Count-II] 362-65, [Count-IV] 452-54.)

Further, under RA/ADA,

[A]n individual is "qualified" for a program if she can meet the essential eligibility requirements for participation in the program, either with or without reasonable accommodations . . . This raises two inquiries: (1) whether the requirements imposed on the individual are essential, and (2) whether the individual can meet them, either with or without reasonable accommodations.

*Redding v. Nova S.E. U., Inc.*, 165 F. Supp. 3d 1274, 1290 (S.D. Fla. 2016). As discussed below, factual question exists whether Howell failed to meet essential requirements of not failing 2019-20's courses and not spending more than three years within first- and second-year curriculum because of MSM's ineffective administration of Howell's NTA **("IAHNTA")** during 2017-18/2018-19. *See Id.* at 1292.

Howell was subjected to unlawful discrimination because of his disability. "Disparate treatment involves discriminatory intent and occurs when a disabled person is singled out for disadvantage because of [their] disability." *Forbes v. St. Thomas U., Inc.*, 768 F. Supp. 2d 1222, 1227 (S.D. Fla. 2010). Factors considered when evaluating disparate treatment:

> (1) the discriminatory effect of the decision, (2) the historical background of the decision, (3) the sequence of events leading up to the challenged decision, (4) any departure from normal procedural or substantive criteria, and (5) relevant legislative or administrative history.

*J.A.M. v. Nova S.E. U., Inc.*, 0:15-CV-60248-KMM, 2015 WL 4751149, at *3 (S.D. Fla. Aug. 12, 2015), *aff'd,* 646 Fed. Appx. 921 (11th Cir. 2016)(unpublished).

For Howell's entire medical education, MSM **granted** Howell's NTA **because, or solely by reason of**, Howell's disability. (Doc. 24 ¶¶ 75-81, 87, 91, 142, 145.) During 2017-18/2018-19, MSM ineffectively administered Howell's NTA. (*Id.* ¶¶ 26, 55, 75, 87, 90-91, 117-24, 142-46, 157-60, 163, [Count-II] 371-73, [Count-IV] 457-59.)

MSM dismissed Howell because he (1) failed 2019-20's courses and (2) had already spent three years within MSM's first- and second-year curriculum by 2019-20's end. (*Id.* ¶¶ 270-72.) **However, MSM dismissed Howell because of consequences Howell suffered from MSM's 2017-18/2018-19 IAHNTA**. (*Id.* ¶¶ [Count-II] 404, [Count-IV] 490.)

1. Howell failed 2019-20's courses **because of** MSM's 2017-18/2018-19 IAHNTA. (*Id.* ¶¶ 74-75, 78-81, 90-91, 117-24, 144-46, 157-60, 163, 172-76, 190, 203; Docs. 1-20, 1-23 at 1; Docs. 1-21, 1-24 at 1-7.) **MSM told Howell this would happen**. (Doc. 24 ¶¶ 172-76.) Howell, via complaints to two officials and one compliance complaint, even notified MSM more

than halfway through 2019-20 that he was already failing 2019-20's courses because of lack of foundational medical knowledgebase **caused by** MSM's 2017-18/2018-19 IAHNTA. (Docs. 1-20, 1-23 at 1; Docs. 1-21, 1-24 at 5-6; Doc. 24 ¶¶ 178-80; Doc. 1-28 at 4.) Bell's subsequent compliance report admitted MSM's IAHNTA from August 2017 to March 2019 and taking nearly two years to resolve. (Doc. 24 ¶¶ 235-46.)

2. Howell **had to** previously prolong his first- and second-year curriculum to three years **because of** MSM's 2017-18 IAHNTA. (*Id.* ¶¶ 138-41.)

During Howell's dismissal hearing, MSM's Committee:

- Knew MSM's IAHNTA persisted during 2017-18/2018-19, despite Howell's complaints. (*Id.* ¶¶ 313, [Count II] 383, [Count IV] 469; Doc. 1-44 ¶¶ 37-56; Doc. 1-44 at 10-27.)

- Knew Howell failed 2019-20's courses **because of** MSM's 2017-18/2018-19 IAHNTA. (Doc. 24 ¶¶ 266-67; Doc. 1-44 ¶¶ 31-36; Doc. 1-44 at 22-27.)

- Knew NTA was necessary for Howell's meaningful access to MSM. (Doc. 24 ¶¶ 264-65, [Count II] 384, [Count IV] 470.)

- Knew of Howell's compliance complaint outlining Howell was already failing courses more than halfway through 2019-20 due to lack of foundational medical knowledgebase **caused by** MSM's 2017-18/2018-19 IAHNTA. (Doc. 24 ¶ 268; Doc. 1-28 at 4.)

- Determined Howell's NTA non-essential. (Doc. 24 ¶¶ 262-63, [Count II] 390-92, [Count IV] 476-78.) Howell contends there is no difference in Committee telling Howell that his NTA was non-essential and saying Howell was too old, male, White, disabled, or any other protected characteristic.

- Knew Howell **had to** previously decelerate and prolong his medical education of MSM's first- and second-year curriculum to three years **because of** MSM's 2017-18 IAHNTA. (Doc. 1-44 ¶ 22; Doc. 1-44 at 20, 25; Doc. 24 ¶¶ 260, 271-72.)

DC erred ruling no facts alleged by Howell reveal "discriminatory animus or motive on behalf of MSM." (Doc. 47 at 50.) Committee's dismissal of Howell **because of consequences** Howell suffered from MSM's IAHNTA:

- Reflects a discriminatory attitude correlating to the discrimination complained of by Howell. *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1320 (11th Cir. 2012).

- Plausibly gives rise to an inference of intentional discrimination. *See Chapter 7 Tr. v. Gate Gourmet, Inc.*, 683 F.3d 1249, 1255-56 (11th Cir. 2012) ("[A] plaintiff may use 'non-comparison circumstantial evidence to raise a reasonable inference of intentional discrimination' and thereby create a triable issue." (quoting *Hamilton*, 680 F.3d at 1320)). Committee openly determined Howell's NTA **non-essential**. (Doc. 24 ¶¶ 262-63.) *See J.A.M.*, 2015 WL 4751149, at *4

43

(alleging contemporary statements revealing discriminatory animus by Committee, which recommended student's dismissal, can show dismissal was intentional discrimination, improperly motivated, or solely by reason of, student's disability).

- Shows deviations by Committee from MSM's "normal procedural or substantive disciplinary criteria." *J.A.M.*, 2015 WL 4751149, at *3-4. Prior to Howell's dismissal hearing, contrary to policies, Committee never provided notice to Howell that one reason for his hearing and MSM's later dismissal decision was Howell already spent three years within MSM's first- and second-year curriculum by 2019-20's end. (Doc. 24 ¶¶ 272-75, [Count-II] 395, 397-99, [Count-IV] 481, 483-85.)

MSM's decisions to (1) assign failing grades for Howell's 2019-20 courses, and (2) dismiss Howell for failing 2019-20's courses and because Howell already spent three years within first- and second-year curriculum, were both improperly motivated and discriminatory because of MSM's 2017-18/2018-19 IAHNTA. *See Redding*, 165 F. Supp. 3d at 1292. MSM's dismissal of Howell, an adverse action, was solely because of, and at least motivated by, Howell's disability. (Doc. 24 ¶¶ [Count II] 405, 417, [Count IV] 491, 502.) *See Brackin v. Intl. Paper*, CV-10-03444-CLS, 2012 WL 4815525, at *20 (N.D. Ala. Oct. 10, 2012) (no meaningful difference between termination of plaintiff because of a disability and a decision to do so

because of an appointment to treat that disability, and providing years of accommodations prior to termination does not negate any inference of discriminatory animus). This Court should not see any meaningful difference between MSM dismissing Howell because, or solely by reason of, Howell's disability and dismissing Howell because of consequences he suffered from MSM's 2017-18/2018-19 IAHNTA. *J.A.M.*, 2015 WL 4751149, at *3. Accordingly, Howell was also qualified when dismissed because of consequences he suffered from MSM's 2017-18/2018-19 IAHNTA. (Doc. 24 ¶¶ 75-81, [Count-II] 364-65, [Count-IV] 453-54.)

After Howell filed this action on August 14, 2020, MSM overturned Howell's dismissal on September 15, 2020, citing MSM's 2017-18/2018-19 IAHNTA. (*Id.* ¶¶ 313-14.) Involvement of MSM's counsel was required before Howell's appeal was answered. (*Id.* ¶¶ 306-12.) DC erred asserting MSM's overturing Howell's dismissal precluded Howell's dismissal being because of, or solely by reason of, his disability, essentially adopting 'no harm, no foul.' (Doc. 47 at 48.) MSM's overturning Howell's dismissal does not undo Howell's harm. *Brackin*, 2012 WL 4815525, at *18 (quoting *Crawford v. Carroll,* 529 F.3d 961, 973 (11th Cir.2008)). *See Redding*, 165 F. Supp. 3d at 1300 ("Redding's failures led her to suffer the ordeal of dismissal proceedings, which may not have occurred if granted her requested accommodations."). Further, after overturning Howell's dismissal, MSM's reentry

45

plan is adverse because it ignores **ongoing irreparable damage** to Howell's foundational medical knowledgebase and academic record, **which MSM said would happen and was caused by MSM's 2017-18/2018-19 IAHNTA**. (*See supra*-Section IV.A.1.c.) MSM's plan seeks to return Howell **to same prejudicial position as before Howell's dismissal**. (*See supra*-Section IV.A.1.c.)

Committee enjoyed substantial supervisory authority over Howell's dismissal and had complete discretion at key decision point. (Doc. 24 ¶ 36.) Committee was deliberately indifferent to Howell's protected rights. (*Id.* ¶ 279.) Committee knew its cited reasons for dismissal were consequences Howell suffered **because of** MSM's IAHNTA.

### B. Intentional Infliction of Emotional Distress

Sufficiently alleging IIED requires,

> (1) the defendant's conduct was extreme and outrageous; (2) the defendant acted intentionally or recklessly; (3) the defendant's conduct caused emotional distress; and (4) the resulting emotional distress was severe.

*Lightning v. Roadway Exp., Inc.*, 60 F.3d 1551, 1558 (11th Cir. 1995).

### 1. MSM's Conduct was Extreme and Outrageous

Whether conduct is extreme and outrageous is viewed in "totality of the circumstances." *Anderson v. Chatham*, 379 S.E.2d 793, 800 (Ga. App. 1989). Conduct must be viewed cumulatively. *Howerton v. Harbin Clinic, LLC*, 776 S.E.2d 288, 300-01 (Ga. App. 2015). Whether a claim rises to the requisite level is a

question of law. *Kuritzky v. Emory U.*, 669 S.E.2d 179, 183 (Ga. App. 2008); *see Ashman v. Marshall's of MA, Inc.*, 535 S.E.2d 265, 267 (Ga. App. 2000); *see also Jarrard v. United Parcel Serv., Inc.*, 529 S.E.2d 144, 148 (Ga. App. 2000).

DC ruled that because MSM did not act with deliberate indifference, MSM's actions were not extreme and outrageous. (Doc. 47 at 80.) Explained *supra*-Sections IV.A.1.b, IV.A.2, DC erred.

DC erred ruling Howell "failed to allege conduct that was extreme and outrageous[.]" (Doc. 47 at 80; Doc. 74 at 16-18.) DC's cited cases in support (Doc. 47 at 80-81; Doc. 74 at 16-17) are inapposite and involved nothing remotely resembling Howell's facts:

A. MSM's ineffective administration of Howell's NTA **("IAHNTA")** for nearly two years that unreasonably interfered with Howell's academic performance and record. (*See supra*-Sections IV.A.1, IV.A.1.b-c, IV.A.2.)

B. MSM's withholding means (e.g., old notes) to help alleviate MSM's IAHNTA. (Doc. 24 ¶ 182.)

C. MSM's deliberate indifference to Howell's complaints spanning three years about MSM's IAHNTA. (*See supra*-Section IV.A.1.b.)

D. MSM dismissing Howell due to consequences MSM knew Howell suffered because of MSM's IAHNTA. (*See supra*-Section IV.A.2.)

E. MSM's attempting to saddle Howell with over $200,000's debt. (Doc. 24 ¶ 332.)

F. MSM ensuring Howell is forever prejudiced by MSM's actions. (*Id.* ¶¶ 313-14, 321-28, 867-72.) MSM's reentry plan seeks to return Howell back to same prejudicial position as before Howell's dismissal. (*Id.* ¶¶ 315-20, 324-28; *see supra*-Sections IV.A.1.c, IV.A.2.)

G. Howell suffering minimum six-year delay in working in his field of study due to MSM's actions, and MSM taking away any reasonable opportunity for Howell to ever study or practice medicine. (Doc. 24 ¶ 284.)

H. MSM's wanton disregard of Howell's rights. (*See supra*-Sections IV.A.1-2; Doc. 24 ¶ 725.) MSM's IAHNTA and subsequent dismissal of Howell due to consequences suffered **because of** MSM's IAHNTA, demonstrate wanton disregard for Howell's rights as a disabled student and should be considered in evaluating whether MSM's actions are extreme and outrageous. *Miraliakbari v. Pennicooke*, 561 S.E.2d 483, 486 (Ga. App. 2002).

I. Special relationship existing between MSM and Howell. A special relationship where one has control over another may produce character of outrageousness where not otherwise found. *Lightning*, 60 F.3d at 1558. MSM had controlling influence over Howell's (disabled student) will, conduct, and interest. (Doc. 24 ¶¶ 65, 78-81, 91, 117-24, 144-46, 157-60, 163, 825.) *See*

48

*Franklin v. Hill*, 417 S.E.2d 721, 724 (Ga. App. 1992) (analyzing special relationships that may produce outrageousness, teachers have power and control over students). Special relationships are confidential relationships where not ordinarily found. *Capriulo v. Bankers Life Co.*, 344 S.E.2d 430, 433-34 (Ga. App. 1986). Terms "fiduciary relationship" and "confidential relationship" are synonymous. O.C.G.A. § 23-2-58. DC ruled Howell sufficiently pled confidential relationship in denying MSM's motion to dismiss Howell's fiduciary duty breach claim. (Doc. 47 at 76-78.)

J.  MSM's employees had medical training and knowledge of Howell's emotional distress. Employees' medical education may support character of outrageousness. *Jarrard*, 529 S.E.2d at 149. MSM is a medical educational institution. (Doc. 24 ¶¶ 7, 18-19.) MSM's administration consists of officials with medical and doctoral degrees. (Docs. 1-4, 1-5, 1-6 at 13, 14, 15, respectively.) These officials knew of Howell's emotional distress. (Doc. 24 ¶¶ 187, 267; Doc. 1-44 ¶ 22; Doc. 1-44 at 22-29.) Knowledge of Howell's susceptibility to emotional distress can also raise conduct to level of extreme and outrageous. *Shepherd v. ISS Intern. Serv. System, Inc.*, 873 F. Supp. 1550, 1558 (N.D. Ga. 1994). Further, Thompson requested and reviewed Howell's confidential psychological evaluations containing anxiety disorder diagnosis. (Doc. 24 ¶¶ 38, 42, 67, 78, 82-83, 164-68.) Thompson knew Howell's

susceptibility, yet MSM's IAHNTA persisted nearly two years despite Howell's complaints.

MSM's actions are not "common vicissitudes of ordinary life." *Jarrard*, 529 S.E.2d at 149. Actions of MSM's employees herein were in furtherance of and within MSM's business scope. (Doc. 24 ¶ 329.)

## 2. <u>MSM Acted Intentionally or Recklessly</u>

MSM's intent to produce Howell's emotional distress is not essential to recovery. *Pierson v. News Group Publications, Inc.*, 549 F. Supp. 635, 643 (S.D. Ga. 1982). It is sufficient if acts, which caused Howell's emotional distress, were intended by MSM. *Carrigan v. C. Adjustment Bureau, Inc.*, 502 F. Supp. 468, 470-71 (N.D. Ga. 1980). MSM's IAHNTA was intended because it occurred for nearly two years, despite Howell's complaints. (*See supra*-Sections IV.A.1, IV.A.1.b.) MSM intended to dismiss Howell. MSM scheduled and held Howell's dismissal hearing. (Doc. 24 ¶¶ 206, 215-16, 229-30, 251.) MSM knew the reasons it cited for Howell's dismissal were consequences Howell suffered because of MSM's IAHNTA. (*See supra*-Section IV.A.2.) MSM's actions were willful, with conscious indifference to Howell's consequences, and have solely benefited MSM. (Doc. 24 ¶¶ 852, 871-73.)

### 3. MSM Caused Howell's Emotional Distress

Howell told MSM its actions were causing his emotional distress. During 2019-20, Howell shared with Anachebe and Thompson the depression, anxiety, and emotional turmoil he was experiencing due to consequences of MSM's IAHNTA. (*Id.* ¶¶ 185-87, 267, 850; Doc. 1-29 at 3; Docs. 1-21, 1-24 at 1-6.) During Howell's dismissal hearing he shared his feelings of depression, anxiety, and panic attacks. (Doc. 24 ¶¶ 267, 850, 876.)

### 4. Howell's Emotional Distress was Severe

DC erred ruling Howell failed to allege sufficient severity of emotional distress, though DC did not explain how. (Doc. 47 at 80-81; Doc. 74 at 16-18.)

"Emotional distress includes all highly unpleasant mental reactions[.]" *Abdul-Malik v. AirTran Airways, Inc.*, 678 S.E.2d 555, 560 (Ga. App. 2009). To demonstrate sufficient severity, Howell must show physical and/or mental manifestations of distress which requires treatment. *Howerton*, 776 S.E.2d at 301-02. Howell's emotional distress is sufficiently severe, with both physical and mental manifestations, and requires medical treatment. (Doc. 24 ¶¶ 875, 877.)

DC erred dismissing IIED claim [Count-XV] and erred dismissing claim's derivative punitive damages claim [Count-XI]. (Doc. 47 at 81-82.) *Stephen A. Wheat Tr. v. Sparks*, 754 S.E.2d 640, 648 (Ga. App. 2014).

### C. Fraud and Negligent Misrepresentation [Counts VII-IX]

Five essential elements for fraudulent misrepresentation [Counts VII-VIII] include:

> (1) the defendant made representations; (2) knowing they were false; (3) intentionally and for the purpose of deceiving the plaintiff; (4) which the plaintiff reasonably relied on; (5) with the proximate result that the plaintiff incurred damages.

*Williams v. Dresser Industries, Inc.*, 120 F.3d 1163, 1167 (11th Cir. 1997). For Howell's two fraud claims, in satisfying fraud's second element, Count-VII uses O.C.G.A. § 51-6-2(a) and Count-VIII uses O.C.G.A. § 51-6-2(b).

Three essential elements of negligent misrepresentation [Count-IX] include:

> (1) the defendant's negligent supply of false information to foreseeable persons, known or unknown; (2) such persons' reasonable reliance upon that false information; and (3) economic injury proximately resulting[.]

*Hardaway Co. v. Parsons, Brinckerhoff, Quade & Douglas, Inc.*, 479 S.E.2d 727, 729 (Ga. 1997).

### 1.  Thompson's Representations [Counts VII-IX]

April 12, 2017, during interactive accommodation review process ("IARP") before Howell agreed to matriculate, Thompson represented a system was in place to satisfy Howell's NTA and provide notes. (Doc. 24 ¶¶ 54, 56 [Count-VII] 561(a), [Count-VIII] 586(a), [Count-IX] 612.)

## 2. Scienter [Counts VII-IX]

The scienter requirement includes actual knowledge or recklessness. *Abrams & Wofsy v. Renaissance Inv. Corp.*, 820 F. Supp. 1519, 1530 (N.D. Ga. 1993).

Thompson's representation was willful misrepresentation [Count-VII], fraudulent or reckless representation [Count-VIII], and/or negligent misrepresentation [Count-IX] because at that time, Thompson:

- Knew no system was currently in place to satisfy Howell's NTA. (Doc. 24 ¶¶ [Count-VII] 561(c), [Count-IX] 614.)

- Knew NTA for Howell was not an established system. (*Id.* ¶¶ [Count-VII] 561(d), [Count-IX] 615.)

- Knew NTA for Howell had not been previously provided by Thompson. (*Id.* ¶¶ [Count-VII] 561(e), [Count-IX] 616.)

- Blinded herself to the truth or falsity regarding the absence of a system in place to satisfy Howell's NTA, nor had it previously been provided by Thompson. (*Id.* ¶ [Count-VIII] 586(c); Doc. 1-13 at 1-2.)

- Blinded herself to the truth or falsity regarding whether any system in place for satisfying Howell's NTA was an established system. (Doc. 24 ¶ [Count-VIII] 586(d).)

- Demonstrated a refusal to know true capabilities and deficiencies regarding MSM's ability to satisfy Howell's NTA. (*Id.* ¶ [Count-VIII] 586(e).)

Thompson's representation to Howell was false [Count-VII], fraudulent or reckless [Count-VIII], and/or negligent [Count-IX] because when Howell started classes, there was no existing system in place. (*Id.* ¶ 90.) By 2017-18's **fifth week**, Howell complained to Thompson stating he was still without NTA. (*Id.* ¶ 94.) Thompson responded MSM was "ready to ensure [Howell's] accommodations would be implemented seamlessly" upon classes beginning, but "[t]his particular accommodation has required us to pivot and rethink the best and multiple ways we can accommodate[.]" (*Id.* ¶ 95.) Thompson never previously communicated any intention of pivoting or rethinking until Howell's complaint. (*Id.* ¶ 95.) No facts indicate MSM has ever meaningfully pivoted or rethought.

MSM may argue Knight's withholding of old notes from Howell contradicts the absence of a system in place for Howell's NTA when he started classes.[13] (*Id.* ¶ 182.) However, the presence of old notes does not equate to the presence of an existing note-taking system for Howell's NTA **when Howell started classes**. The age of the notes is unknown, and Thompson was unaware of them until March 2019. (*Id.* ¶ 182.) Further, October 2017, Knight admitted Howell's NTA was a "totally new process" and "nothing [was] set to work seamlessly and quickly." (*Id.* ¶ 109.) Howell did not start receiving notes until 38 days **after** classes started. (*Id.* ¶ 110.)

---

[13] Students performing poorly can be mandated to join Knight's OSLER where they would, in theory, have access to old notes. (Doc. 24 ¶ 183.)

A note-taking system for Howell's NTA did not exist upon Howell starting classes. (*Id.* ¶¶ 90, 109.)

Thompson's representation to Howell was about an existing system in place to satisfy Howell's NTA and provide notes for Howell, a disabled student. Assuming arguendo some generic note-taking system did exist when Howell began classes, this is not equal to a note-taking system for a disabled student receiving an NTA. To argue otherwise ignores Howell did not receive notes pursuant his NTA until thirty-eight days after classes started and Howell only received notes for 61% of 2017-18's classes. (*Id.* ¶¶ 110, 120.) An NTA for a disabled student requires some measure of reliability and consistency because it has been determined during IARP to be essential to that student's success.

MSM may argue Howell's 2020 complaints to Anachebe and Thompson, "I also asked for and received all the notes that were taken for pathology and pathophysiology last year . . . I now receive new notes this year and have access to old notes as a backup[,]" contradicts Howell's argument about the absence of a system in place for Howell's NTA when classes began. (Docs. 1-21, 1-24 at 6.) However, if Howell, during 2019-20, had access to notes from 2018-19, this does not equate to an existing note-taking system for Howell's NTA **when Howell started in 2017**.[14] Noted above, October 2017, Knight admitted Howell's NTA was

---

[14] Inferably these notes were from note-takers of Howell's NTA who took notes for

a "totally new process" and "nothing [was] set to work seamlessly and quickly." (Doc. 24 ¶ 109.) When Howell started classes in 2017, no system existed. (*Id.* ¶ 90.)

Thompson's representation to Howell was about an existing fact, not future promises or speculation. *Georgia-Carolina Brick & Tile Co. v. Brown*, 266 S.E.2d 531, 535 (Ga. App. 1980).

### 3. Thompson's Representations Made to Deceive [Counts VII-VIII]

April 12, 2017, during IARP before Howell agreed to matriculate, Thompson concealed material facts to deceive and mislead Howell by neither warning nor advising him:

- NTA would be a new school process for providing notes for students with accommodations. (Doc. 24 ¶ 93.)

- NTA was not an established service and would be a new process for Thompson. (*Id.* ¶¶ 93, 109, [Count-VII] 562(a), [Count-VIII] 588(a).)

- No system was currently in place to satisfy Howell's NTA. (*Id.* ¶¶ 90, 93, [Count-VII] 562(b), [Count-VIII] 588(b).)

- NTA would not be available upon Howell's arrival. (*Id.* ¶¶ 90, 110, [Count-VII] 562(c), [Count-VIII] 588(c).)

---

all classes comprising 2018-19's second year curriculum, including the courses Howell would be taking in 2019-20 due to his forced academic deceleration. (Doc. 24 ¶¶ 138-41.)

- NTA would have initial delay in producing notes. (*Id.* ¶¶ 90, 94, 110-11, [Count-VII] 562(d), [Count-VIII] 588(d).)

Due to Thompson's representations and omissions, Howell was never allowed to objectively weight other schools he was accepted to more heavily in deciding where to matriculate. (*Id.* ¶¶ [Count-VII] 570, [Count-VIII] 596.) Thompson concealed material facts to deceive and mislead, and induce Howell's matriculation as a paying student on May 15, 2017. (*Id.* ¶¶ [Count-VII] 561(i), 562(g), [Count-VIII] 586(f), 588(g).) *See* O.C.G.A. § 51-6-2(a); O.C.G.A. § 51-6-4(a).

### 4. Howell's Reasonable Reliance [Counts VII-IX]

As a disabled student, Howell's primary resource for accommodations and disability concerns was ODS. (Doc. 24 ¶¶ 68, 84.) Thompson was **ODS's Manager**. (*Id.* ¶ 22.) Howell justifiably relied upon Thompson's representations because she was the official in charge of determining eligibility for accommodations, granting accommodations, and managing implementation. (*Id.* ¶¶ 22-23, 51-55, 61, 68-69, 71-73, 84, [Count-VII] 563-64, [Count-VIII] 589-90, [Count-IX] 625-26.) *See Brown*, 266 S.E.2d at 535 ("Statements . . . were not mere opinions, or promises as to future events, but they were representations of fact as to the inherent nature and quality of the brick, **by one upon whom appellees were entitled to rely as having special knowledge** of bricks made by his employer." (emphasis added)).

Thompson's actions were in furtherance of and within MSM's business scope. (Doc. 24 ¶¶ [Count-VII] 568, [Count-VIII] 594, [Count-IX] 630.)

Howell exercised due diligence alerting Thompson of his disability nearly four months before classes began and inquiring if MSM could accommodate him. (*Id.* ¶¶ 46-48, 59, [Count-VII] 565-66, [Count-VIII] 591-92, [Count-IX] 627-28.) April 12, 2017, Thompson communicated a system was in place to satisfy Howell's NTA and provide notes for Howell, a disabled student. (*Id.* ¶¶ 53-54, 56, [Count-VII] 561(a), [Count-VIII] 586(a), [Count-IX] 612.) Contrary information was not available to Howell, nor would a reasonable person doubt statements, regarding accommodations, from the ODS Manager. (*Id.* ¶¶ 22-23, 60-61, [Count-VII] 567, [Count-VIII] 593, [Count-IX] 629.) Howell could not determine the falsity of Thompson's representation because capabilities to accommodate students are confidential, just as communications with students. (*Id.* ¶ 62.)

DC erred dismissing fraud and negligent misrepresentation claims, ruling "Howell has failed to allege justifiable reliance on Thompson's statements regarding the [NTA] . . . Howell was not entitled to rely on [Thompson]'s statements because her statements describing a 24-48-hour turnaround time 'goal' are speculative." (Doc. 47 at 67; *see* Doc. 74 at 15.) DC erred because it only focused on Thompson's representation that Howell's NTA would come with a 24-48-hour turnaround goal for classes. (Doc. 24 ¶¶ [Count-VII] 561(f), [Count-VIII] 587(a), [Count-IX] 621.)

The crux of Howell's reliance was Thompson's representation there was a system in place to satisfy his NTA and provide him notes. (*Id.* ¶¶ 54, [Count-VII] 561(a), [Count-VIII] 586(a), [Count-IX] 612.) This system did not exist upon Howell beginning classes. (*Id.* ¶ 90.) Howell's argument about reliance on Thompson's representation about a 24-48-hour turnaround goal for Howell's NTA does not preclude Howell's reliance on Thompson's representation that a system was in place to satisfy his NTA and provide him notes. The existence of a system in place to satisfy Howell's NTA is **independent** of a 24-48-hour turnaround goal.

DC ruled Howell sufficiently pled a confidential relationship in denying MSM's motion to dismiss Howell's fiduciary duty breach claim. (Doc. 47 at 76-78.) The question of justifiable reliance is a jury question, particularly if Howell enjoyed a confidential relationship with MSM. *Douglas v. Bigley*, 628 S.E.2d 199, 206 (Ga. App. 2006).

### 5.  Howell's Proximate Damages [Counts VII-IX]

Howell incurred proximate damages caused by MSM's representations and omissions. (Doc. 24 ¶¶ 332, [Count-VII] 569-81, [Count-VIII] 595-607, [Count-IX] 633-42.) O.C.G.A. § 51-6-1.

DC erred dismissing Howell's fraud/negligence claims [Counts VII-IX] and erred dismissing claims' derivative punitive damages claims [Count-XI]. (Doc. 47 at 81-82.) *Stephen A. Wheat Tr. V. Sparks*, 754 S.E.2d 640, 648 (Ga. App. 2014).

### D. Third Motion to Amend [Doc. 62] [15]

July 30, 2020, MSM dismissed Howell, a White Caucasian male (Doc. 62-1 ¶ 355; Doc. 62-2 ¶ 2), because policy dictates first- and second-year curriculum consist of **no more than 36 months**, excluding leaves of absence, and Howell reached this limit. (Doc. 24 ¶¶ 270, 272; Doc. 62 at 3.)

October 15, 2021, nearly fifteen months after Howell's dismissal, a Black African-American female MSM student told Howell **she spent four years**, without any leave of absence, completing MSM's first two academic years. (Doc. 62 at 3; Doc. 62-1 ¶ 353-54; Doc. 62-2 ¶ 1.) Good cause exists because this new evidence demonstrates MSM's policy dismissed Howell, a White Caucasian male student, but was not enforced against a Black African-American female student. (Doc. 62 at 3-4.) Accordingly, MSM discriminated against Howell, because of race (42 U.S.C. § 2000d) and sex (20 U.S.C. § 1681). (Doc. 62 at 3-4; Doc. 62-1 ¶¶ 355-357.)

DC erred ruling, "Howell has failed to argue, let alone demonstrate, that he investigated potential sex and race discrimination claims with diligence." (Doc. 74 at 28.) Good cause exists because Howell indicates his new sex and race discrimination claims were recently discovered and not available before Scheduling Order's deadline. (Doc. 62 at 3-4; Doc. 62-1 ¶ 353; Doc. 62-2 ¶ 1.) *See Gallien v.*

---

[15] Doc. 62's title is misnamed. (*See supra*-Section I, note 3.)

*Binkley*, CV408-037, 2008 WL 4916394, at *2 (S.D. Ga. Nov. 14, 2008) (nothing within amended pleadings, such as new claims only recently discovered, from which one could infer diligence). Howell's diligence is inferable because he indicates his new claims were recently discovered. (Doc. 62 at 3; Doc. 62-1 ¶ 353; Doc. 62-2 ¶ 1.) Further, Howell's 2021 prospective class had 100 students, approximately inferred from 2020 prospective class's 89 students. (Doc. 1-52 at 5.) Howell was precluded from investigating MSM's students pursuant MSM's policies. *See* Doc. 1-6 at 92-93 (respecting other's privacy is an important scholastic non-cognitive characteristic).

DC erred ruling Howell's new claims occurred when he was a student and thus were available before filing this action. (Doc. 74 at 29.) Howell's motion articulates this new evidence was first available on October 15, 2021, approximately **eleven months after** Scheduling Order's December 20, 2020 amendment deadline (Doc. 28 at 12; Doc. 29), and **fourteen months after** original Complaint's filing. (Doc. 62 at 3; Doc. 62-1 ¶ 353; Doc. 62-2 ¶ 1.) Prior to amendment deadline, Howell could not seek leave to amend because he was without the information necessary to assert his viable claims. *See Virciglio v. Work Train Staffing LLC*, 674 Fed. Appx. 879, 885 (11th Cir. 2016)(unpublished) (plaintiff did not have necessary information to assert viable claim until after amendment deadline).

DC erred ruling Howell was not prompt filing this motion to amend because after discovering the new evidence, Howell made three unrelated filings before this motion to amend. (Doc. 74 at 29-30 (quoting *Morrissey v. ASD Shared Services, LLC*, 1:12-CV-4345-CAP-AJB, 2013 WL 11330647, at \*3 (N.D. Ga. Sept. 3, 2013) (citing *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998))).) *Sosa* does not support DC's argument. In *Sosa*, diligence has no relation to whether a party, after discovery of new information, submits other filings before seeking leave to amend. *Sosa*, 133 F.3d at 1419.

DC labeled Howell's pleadings "voluminous." (Doc. 47 at 30.) Howell attempted to make things **less voluminous** by systematically and expeditiously filing his two motions to amend [Docs. 59 and 62] chronologically from the date their respective underlying facts became known. (Doc. 70 at 15.) Howell's **second motion to amend** addressed new evidence discovered **October 12, 2021**. [16] Howell's **third motion to amend** addressed new evidence discovered **October 15, 2021**. (Doc. 70 at 2-3.) Howell's third motion to amend was filed November 12, 2021, **twenty-eight days** after discovery of new evidence on October 15, 2021, **demonstrating diligence**. *See S. Grouts & Mortars, Inc. v. 3M Co.*, 575 F.3d 1235, 1242 (11th Cir. 2009) (waiting over a month to seek leave to amend represents lack of diligence).

---

[16] Second motion to amend was filed fourteen days afterwards. (Doc. 59 at 3.)

DC's further determination of motion under FED. R. CIV. P. 15(a) was not made. *Sosa*, 133 F.3d at 1419. DC abused its discretion denying Howell's third motion to amend adding sex and race discrimination claims.

## **CONCLUSION**

DC erred dismissing Howell's claims [Counts I-IV, VII-IX, XI, XV]. DC's denial of Howell's third motion to amend was abuse of discretion.

Respectfully submitted this 20th day of March, 2023.

*//s// Drew Mosley*       279 W. Crogan St.
Drew Mosley, Esq.       Lawrenceville, GA 30046
Georgia Bar No. 526406   Tel: (678) 225-0098
Drew Mosley, LLC      Fax: (678) 221-0230
Attorney for Appellant    drew@mlawmail.com

## <u>CERTIFICATE OF COMPLIANCE</u>

Counsel for Appellant hereby certifies that this brief complies with the type-volume limitation set forth in FRAP 32(a)(7)(B). This brief contains 12,992 words.

<u>*//s// Drew Mosley*</u>            279 W. Crogan St.
Drew Mosley, Esq.            Lawrenceville, GA 30046
Georgia Bar No. 526406            Tel: (678) 225-0098
Drew Mosley, LLC            Fax: (678) 221-0230
Attorney for Appellant            drew@mlawmail.com

# **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 20th day of March, 2023, I electronically filed the

foregoing with the Clerk of Court, to be served by operation of the Court's electronic

filing system upon the following:

> Nakimuli Davis-Primer
> Baker, Donelson, Bearman, Caldwell & Berkowitz, PC
> One Eastover Center
> 100 Vision Drive, Ste 400
> Jackson, Mississippi 39211
> ndavisprimer@bakerdonelson.com
>
> Jonathan Stuart
> Baker, Donelson, Bearman, Caldwell & Berkowitz, PC
> 3414 Peachtree Rd NE
> Monarch Plaza, Suite 1500
> Atlanta, Georgia 30326
> jstuart@bakerdonelson.com

Respectfully submitted this 20th day of March, 2023.

> <u>*//s// Drew Mosley*</u>     279 W. Crogan St.
> Drew Mosley, Esq.     Lawrenceville, GA 30046
> Georgia Bar No. 526406     Tel: (678) 225-0098
> Drew Mosley, LLC     Fax: (678) 221-0230
> Attorney for Appellant     drew@mlawmail.com